State of West Virginia
Office of the Attorney General

John B. McCuskey                                                    Phone: (304) 558-2021
Attorney General                                                       Fax: (304) 558-0140

November 17, 2025

Nwamaka C. Anowi
Clerk of Court
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219

Submitted Electronically via CM/ECF

  Re: No. 22-1927: *Shauntae Anderson, et al. v. William Crouch, et al.*

Dear Ms. Anowi:

  In *Tennessee v. Kennedy*, No. 1:24-cv-00161-LG-BWR (S.D. Miss. Oct. 22, 2025), the court invalidated HHS rules implementing Section 1557 of the Affordable Care Act. Those rules "redefin[ed] sex discrimination and prohibit[ed] gender-identity discrimination." Op.1. If implemented, the rules would have required healthcare providers to provide "gender-affirming care that the[y] … would provide … for other purposes if the denial or limitation is based on an individual's sex assigned at birth, gender identity, or gender otherwise recorded." Op.17. This rulemaking—aligned with Plaintiff's argument here—exceeded HHS's authority. *See* Pl.'s Supp. Br. 16 n.9 (citing rules invalidated by *Kennedy*), 22 (making "same surgical procedures" argument). It did so because "Congress only contemplated biological sex when it enacted Title IX." Op.1.

  The court started from first principles. "Statutes 'have a single, best meaning,' which 'is fixed at the time of enactment.'" Op.11-12 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 401 (2024)). And "[t]he appropriate starting point when interpreting any statute is its plain meaning." Op.12 (cleaned up). So in the Title IX context, "sex" means what it meant in 1972, "when the statute was enacted." Op.12. The court's review of contemporary dictionaries showed "sex" referred to

Nwamaka C. Anowi
November 17, 2025
Page 2

"biological sex." Op.12-13. And "sex" is distinct from "gender identity." Op.14. That distinction mattered to the court there—as it does here—because Section 1557 explicitly incorporates Title IX's sex-discrimination prohibition. Op.12.

Title IX's distinction between sex and gender identity means that *Bostock*'s "analysis cannot reasonably be applied to Title IX." Op.25. But even applying *Bostock*'s reasoning, "the refusal to provide procedures … for gender transition is not sex discrimination." Op.25. Instead, "the medical diagnosis is the but-for cause of the denial of healthcare." Op.17 (citing *United States v. Skrmetti*, 145 S. Ct. 1816, 1835 (2025)). So "[t]he provider's refusal … is not based on sex." Op.17.

The same principles apply here. Under Title IX, sex means sex. And West Virginia's exclusion doesn't turn on sex. So it doesn't violate Section 1557. To the extent it can be applied to Title IX, *Bostock* doesn't change that analysis. This Court should reverse.

Sincerely,

JOHN B. MCCUSKEY
  ATTORNEY GENERAL

/s/ Caleb B. David
Caleb B. David
  *Deputy Solicitor General*
  *Counsel of Record*

OFFICE OF THE
ATTORNEY GENERAL
OF WEST VIRGINIA
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021

*Counsel for Appellants William Crouch, et al.*

Nwamaka C. Anowi
November 17, 2025
Page 3

## CERTIFICATE OF COMPLIANCE

This letter complies with Federal Rule of Appellate Procedure 28(j) because it contains 347 words.

/s/ Caleb B. David
Caleb B. David
