No. 22-1927

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

SHAUNTAE ANDERSON, *et al.*,

*Plaintiffs-Appellees,*

v.

WILLIAM CROUCH, *et al.*,

*Defendants-Appellants.*

On Appeal From The United States District Court for the
Southern District Of West Virginia in Case No. 3:20-cv-00740 (Chambers, J.)

## SUPPLEMENTAL BRIEF OF DEFENDANTS-APPELLANTS

LOU ANN S. CYRUS
KIMBERLY M. BANDY
ROBERTA F. GREEN

SHUMAN MCCUSKEY SLICER
PLLC
P.O. BOX 3953
CHARLESTON, WV 25339
(304) 345-1400

JOHN B. MCCUSKEY
 *Attorney General*

CALEB B. DAVID
 *Deputy Solicitor General*
 *Counsel of Record*

OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
Phone: (304) 558-2021
caleb.b.david@wvago.gov

*Counsel for Defendants- Appellants*

# TABLE OF CONTENTS

Table Of Authorities ............................................................................ ii

Introduction ....................................................................................... 1

Summary Of The Argument .................................................................. 2

Argument ........................................................................................... 2

   I.   *Medina* forecloses Plaintiffs' Medicaid Act claims. ................... 3

   II.  This Court can decide the issue. ............................................... 11

Conclusion ........................................................................................ 16

Certificate Of Compliance .................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Adamson,*
  132 F.4th 924 (6th Cir. 2025) .................................................................5

*Arcadia, Ohio v. Ohio Power Co.,*
  498 U.S. 73 (1990).................................................................14

*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015).................................................................2, 8

*Beal v. Doe,*
  432 U.S. 438 (1977).................................................................10

*Carlson v. Green,*
  446 U.S. 14 (1980).................................................................16

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991).................................................................14

*Gonzaga Univ. v. Doe,*
  536 U.S. 273 (2002).................................................................4, 5, 7

*Gunn v. Minton,*
  568 U.S. 251 (2013).................................................................12

*Hormel v. Helvering,*
  312 U.S. 552 (1941).................................................................15, 16

*Kerr v. Planned Parenthood S. Atl.,*
  143 S. Ct. 2633 (2023) .................................................................14

*Alec L. ex rel. Loorz v. McCarthy,*
  561 F. App'x 7 (D.C. Cir. 2014).................................................................13

*Medina v. Planned Parenthood S. Atl.,*
  606 U.S. 357 (2025).................................................................*passim*

*Nansemond Indian Nation v. Virginia,*
　　795 F. Supp. 3d 733 (E.D. Va. 2025) ...............................9

*Oneida Indian Nation of N.Y. State v. Oneida Cnty.,*
　　414 U.S. 661 (1974).......................................................12

*Pennhurst State Sch. & Hosp. v. Halderman,*
　　451 U.S. 1 (1981)..............................................................4

*Planned Parenthood S. Atl. v. Baker,*
　　941 F.3d 687 (4th Cir. 2019)........................................14

*Planned Parenthood S. Atl. v. Kerr,*
　　95 F.4th 152 (4th Cir. 2024) ........................................14

*Rendelman v. Rouse,*
　　569 F.3d 182 (4th Cir. 2009)..........................................4

*Royal Canin U.S.A., Inc. v. Wullschleger,*
　　604 U.S. 22 (2025)........................................................12

*South Dakota v. Dole,*
　　483 U.S. 203 (1987)........................................................5

*Spokeo, Inc. v. Robins,*
　　578 U.S. 330, 337 (2016)..............................................11

*Steel Co. v. Citizens for a Better Env't,*
　　523 U.S. 83 (1998)........................................................12

*Suter v. Artist M.,*
　　503 U.S. 347 (1992)......................................................10

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,*
　　508 U.S. 439 (1993)......................................................15

*United States v. Cisson,*
　　33 F.4th 185 (4th Cir. 2022) ...................................13, 14

*United States v. Smithers,*
　　92 F.4th 237 (4th Cir. 2024) ........................................14

*United States v. White,*
    836 F.3d 437 (4th Cir. 2016) ................................................................13

**Statutes and Constitutional Provisions**

42 U.S.C. § 1396a ............................................................................. *passim*

42 U.S.C. § 1396c ...............................................................................6, 9

42 U.S.C. § 1396d ..................................................................................7

42 U.S.C. § 1983 ....................................................................................3

U.S. Const. art. III, § 2 ........................................................................11

**Other Authorities**

42 C.F.R. § 440.240 ...............................................................................9

**INTRODUCTION**

When West Virginia accepted federal funds for its Medicaid program, it knew those funds came with strings attached. The Medicaid Act requires States to meet more than eighty conditions. And the Act has teeth. If West Virginia does not meet statutory conditions, then the federal government can stop its funding. Considering how the federal government funds about 75 percent of West Virginia's Medicaid program, JA1095-1096, JA1132-1133, JA1204, getting federal approval is vital.

But as with any Spending Clause legislation, Congress must speak clearly and unambiguously when it means to impose conditions through the Medicaid Act. And in *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025), the Supreme Court said that a part of Section 1396a of the Medicaid Act didn't confer individually enforceable rights because Congress didn't speak with the required clarity. So the Medicaid beneficiaries there couldn't sue state officials for perceived compliance failures; the federal government alone supervises compliance.

The Medicaid Act's availability and comparability requirements do not speak clearly enough to create privately enforceable rights. Neither provision contains rights-conferring language. Instead, Plaintiffs inappropriately seek

to build rights on "mere implication." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 332 (2015) (opinion of Scalia, J.) (rejecting private right of action under Medicaid Act). That won't do. Neither provision is privately enforceable, and Plaintiffs thus lack a cause of action under either.

The Court should reverse.

## SUMMARY OF THE ARGUMENT

Congress did not put States on notice that Sections 1396a(a)(10)(A) or (B) would expose them to private liability. To do so, Congress would have needed to use unmistakable rights-conferring language. Like the Medicaid Act provision considered in *Medina*, that language is absent from both the availability and comparability provisions. So neither provision permits private enforcement actions.

The Court can decide whether the provisions confer enforceable rights. Federal question jurisdiction depends on the answer. And even if it doesn't, the Court has discretion to decide antecedent issues *sua sponte*.

## ARGUMENT

*Medina* reversed a Fourth Circuit decision recognizing privately enforceable rights in the Medicaid Act. The Supreme Court clarified how courts should examine whether spending-power legislation confers rights.

With *Medina* guiding the way, this Court should find that the Medicaid Act's availability and comparability provisions are not privately enforceable.

The Court should rule on the issue now. Without a statutory cause of action, there's no federal question. So the issue goes to the Court's subject-matter jurisdiction. And the Court can decide antecedent issues anyway.

## I. *Medina* forecloses Plaintiffs' Medicaid Act claims.

The Medicaid Act itself does not contain a private right of action. And Section 1983 doesn't provide one for every federal statute. Only statutes conferring "rights" are privately enforceable. *Medina* confirmed that at least one part of the Medicaid Act doesn't confer privately enforceable rights, and nothing distinguishes that part from the two Medicaid Act provisions Plaintiffs invoke here. So Plaintiffs lack a cause of action.

1. Section 1983 gives individuals recourse for deprivations of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "In other words, [Section] 1983 provides a mechanism for plaintiffs to enforce constitutional or statutory provisions that confer personally held federal rights." *Medina*, 606 U.S. at 386 (Thomas, J., concurring).

"But federal statutes do not confer" enforceable rights "as a matter of course." *Medina*, 606 U.S. at 365 (cleaned up). Indeed, it's "rare." *Id.* at 369. Statutes "create individual rights only in atypical cases." *Id.* at 368 (cleaned up). That's true even if the law "seeks to *benefit* one group or another." *Id.* Put another way, an individual doesn't have an enforceable statutory right simply because a law benefits him.

It's even rarer for a spending-power statute to confer a privately enforceable right. *Id.* That's because spending-power legislation is akin to a "contract." *Id.* at 371-72. The "spending power allows Congress to offer funds to States that agree to certain conditions." *Id.* at 365. When a State fails to comply, the federal government enforces the statute by "terminat[ing] funds to the State." *Id.* at 365-66 (cleaned up) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002)). Fund termination or withholding is the "'typical remedy for state noncompliance.'" *Id.* at 373 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981)).

Private enforcement suits aren't available remedies unless the State "voluntarily and knowingly consented" after receiving "clear" and "unambiguous" advance notice. *Id.* (cleaned up); *accord Rendelman v. Rouse*, 569 F.3d 182, 188 (4th Cir. 2009). In other words, States must be "cognizant

of the consequences of their participation." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (cleaned up). "So long as the congressional offer is clearly stated—including as to money damages—the States may permit this extra-constitutional regulation." *Ali v. Adamson*, 132 F.4th 924, 932 (6th Cir. 2025)

To prove that a statute confers an enforceable right, Plaintiffs must do more than show that a statute "provide[s] a benefit or protect[s] an interest." *Medina*, 606 U.S. at 368. They must show "that the law in question "clear[ly] and unambiguous[ly] uses rights-creating terms." *Id.* (cleaned up). And they must also prove that the law displays "an unmistakable focus on individuals like" them. *Id.* (citing *Gonzaga*, 536 U.S. at 284). This test "is a demanding bar and a significant hurdle that will be cleared only in the atypical case." *Id.* at 375 (cleaned up).

2. After *Medina*, Plaintiffs can't clear that hurdle. *Medina* considered whether the Medicaid Act's "any-qualified-provider" provision, 42 U.S.C. § 1396a(a)(23)(A), conferred a privately enforceable right, *Medina*, 606 U.S. at 376. The Court found it didn't for several reasons.

For starters, the text doesn't use "rights-creating" language. *Medina*, 606 U.S. at 377-78. Rather, it requires Medicaid plans to "provide that ... any individual eligible for medical assistance (including drugs) may obtain such

assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required." 42 U.S.C. § 1396a(a)(23)(A). The Court read this provision as a condition that "a State must [meet] to participate in Medicaid." *Medina*, 606 U.S. at 377. The provision "seeks to benefit both providers and patients." *Id.* But it doesn't give "clear and unambiguous notice that, if [a State] accepts funds, it may face private suits asserting an individual right to choose a medical provider." *Id.* at 378.

The rest of the provision's text confirmed the Court's conclusion. The provision "carve[s] out various exceptions" to the requirement. *Id.* (citing 42 U.S.C. § 1396a(a)(23)). It permits States to exclude providers with felony convictions. And States get to determine "which felony convictions qualify for that exclusion." *Id.* at 378-79 (citing 42 U.S.C. § 1396a(a)(23)(B)). The Court reasoned that Congress wouldn't "convey a right against the States in one breath but let States control its scope in the next." *Id.* at 379.

What's more, the "statutory context" showed Congress wasn't endowing Medicaid beneficiaries with new statutory rights. *Id.* States are only required to "comply substantially" with the Act's mandates to continue receiving federal funding. *Id.* (citing 42 U.S.C. § 1396c). A "focus on 'aggregate'

6

compliance suggests that a statute addresses a State's obligations to the federal government, not the rights 'of any particular person.'" *Id.* (cleaned up) (quoting *Gonzaga*, 536 U.S. at 288). And "Congress placed the any-qualified-provider provision … in a subsection titled 'Contents.'" *Id.* (citing 42 U.S.C. § 1396a(a)). "Contents" refers to (at the time) 87 requirements "a state plan must include to qualify for federal funding." *Id.* (citing 42 U.S.C. § 1396a(a)). So if the any-qualified-provider provision "did create an individually enforceable right," then "[m]any other Medicaid plan requirements would likely do the same." *Id.* at 380. And the "rights-creating" exception "might more nearly become the rule." *Id.*

**3.** The availability and comparability provisions—found in the very same section as the provision at issue in *Medina*—are cast in the same mold. Neither contains rights-creating language. And both are listed among the now-89 plan requirements with which States must substantially comply. So neither is privately enforceable.

Start with the availability provision, 42 U.S.C. § 1396a(a)(10)(A). The text requires a "State plan for medical assistance" to provide "for making medical assistance available" in at least ten (of thirty-two) broad categories of care. *Id.* (citing 42 U.S.C. § 1396d(a)). And that "medical assistance" must be

made available to nine categories of people.  *Id.* § 1396a(10)(A)(i).  States have the "option" to extend coverage to dozens of other "groups" and "reasonable categories" of people.  *Id.* § 1396a(10)(A)(ii).  That language tells States what their plans must include to qualify for funding.  But it says nothing about conferring enforceable rights.  Like the any-qualified-provider provision, the availability provision "seeks to benefit … patients."  *Medina*, 606 U.S. at 377.  That's the purpose of the program.  But the availability requirement lacks "clear and unambiguous" language putting States on "notice that … [they] may face private suits."  *Id.* at 378; *see also Armstrong*, 575 U.S. at 332 (Scalia, J.) (rejecting the notion that mere beneficiaries under the Medicaid Act may use it to justify a private cause of action).

The comparability provision similarly lacks rights-conferring language.  That provision says "that the medical assistance made available to any individual" eligible under the availability provision "shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual."  42 U.S.C. § 1396a(a)(10)(B)(i).  And it says "that the medical assistance made available to any individual" eligible under the availability provision "shall not be less in amount, duration, or scope than the medical assistance made available to individuals" not included in the availability

8

provision's required eligibility group.  *Id.* § 1396a(a)(10)(B)(ii).  In other words, Medicaid beneficiaries are split into two groups—the categorically needy and the medically needy.  The services provided by States to "any categorically needy beneficiary" can't be lesser "than those services available to a medically needy beneficiary."  42 C.F.R. § 440.240(a).  And within the categorically and medically needy groups, the State "must provide" equal services "for all beneficiaries."  *Id.* § 440.240(b).  This provision includes structural requirements for States' Medicaid plans.  But it lacks any rights-conferring language.

Statutory context confirms that the availability and comparability provisions don't confer privately enforceable rights.  Like the any-qualified-provider provision, the availability and comparability provisions are among the "Contents" "a state plan must include to qualify for federal funding."  *Medina*, 606 U.S. at 379 (citing 42 U.S.C. § 1396a(a)).  And a State need only "comply substantially" with those "Contents" to continue receiving federal funding.  *Id.* (citing 42 U.S.C. § 1396c); *see also Nansemond Indian Nation v. Virginia*, 795 F. Supp. 3d 733, 769-71 (E.D. Va. 2025) (finding that three other provisions of Section 1396a(a) did not confer privately enforceable rights).

Moreover, the scope of "medical assistance" required to be "available" and "comparable" is subject to States' discretion. State plans must "include reasonable standards … for determining eligibility for and the extent of medical assistance under the plan." 42 U.S.C. § 1396a(a)(17). The Medicaid Act "does not require States to provide funding for all medical treatment falling within" these "general categories." *Beal v. Doe*, 432 U.S. 438, 441 (1977); *see also Medina*, 606 U.S. at 398-99 (Jackson, J., dissenting) (contrasting the "significant control" granted by the availability provision over eligibility and "types of services" covered with the mandatory nature of the any-qualified-provider provision). Rather, its "language confers broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Beal*, 432 U.S. at 444. Congress's broad grant of discretion is inconsistent with the creation of privately enforceable rights. *Medina*, 606 U.S. at 379; *cf. Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (finding that language requiring "reasonable efforts" does not "unambiguously confer an enforceable right upon" a different law's "beneficiaries").

\*\*\*

In sum, the availability and comparability provisions aren't functionally different than the any-qualified-provider provision. They are State Medicaid plan requirements that need to be met to obtain federal funding. The federal government supervises plan compliance. And nothing in either provision confers privately enforceable rights. So Plaintiffs lack a cause of action under the Medicaid Act. The Court should reverse.

## II.    This Court can decide the issue.

At argument, Plaintiffs mistakenly suggested that the Court cannot reach this fundamental issue. But this Court can rule on the existence of a cause of action under the Medicaid Act for at least three reasons.

*First*, the issue is jurisdictional—at least in this limited circumstance. Plaintiffs must raise a federal question to pursue their claim. But *Medina* prevents them from using the Medicaid Act to do so. So there's no federal claim conferring jurisdiction.

Start from first principles. Article III of the Constitution limits the judicial power of the United States to decide "[c]ases" or "[c]ontroversies." U.S. CONST. art. III, § 2. "[N]o principle is more fundamental to the judiciary's proper role in our system of government" than this limitation. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (cleaned up). But federal courts need more

than Article III jurisdiction to hear a case. They need either diversity or federal-question jurisdiction, too. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). Plaintiffs rely on federal-question jurisdiction here. JA43.

Federal-question jurisdiction "enables federal courts to decide cases founded on federal law." *Royal Canin*, 604 U.S. at 26. And courts invoke this jurisdiction most frequently "when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). But "[i]f the complaint presents no federal question, a federal court may not hear the suit." *Royal Canin*, 604 U.S. at 26.

In most circumstances, "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). But "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper … when the claim is … 'foreclosed by prior decisions of'" the Supreme Court. *Id.* (quoting *Oneida Indian Nation of N.Y. State v. Oneida Cnty.*, 414 U.S. 661, 666 (1974)). *Medina* forecloses Plaintiffs' Medicaid Act claims. So this case isn't one in which Plaintiffs "win[] under one construction of [the Medicaid Act] and lose[] under another." *Steel Co.*, 523 U.S. at 89. Post-

*Medina*, only one construction exists—the Supreme Court's. Plaintiffs lack a right of action to enforce West Virginia's compliance with the Medicaid Act. *See, e.g.*, *Alec L. ex rel. Loorz v. McCarthy*, 561 F. App'x 7, 8 (D.C. Cir. 2014) (affirming dismissal for lack of subject-matter jurisdiction where the Supreme Court had "recently reaffirmed" that Plaintiffs had no federal-law claim).

*Second*, West Virginia Medicaid has now properly presented this question by way of both argument and supplemental briefing. "[W]hen an intervening decision of this Court or the Supreme Court affects precedent relevant to a case pending on direct appeal, an appellant may timely raise a new argument, case theory, or claim based on that decision while his appeal is pending without triggering the abandonment rule." *United States v. White*, 836 F.3d 437, 443-44 (4th Cir. 2016), *abrogated on other grounds by United States v. Stitt*, 586 U.S. 27 (2018). That's especially so when the Court has before it "supplemental briefing on new arguments or claims [on] an intervening court decision [that] upends precedent relevant to an appeal." *Id.* at 443. "[S]uch briefs obviate the risk of an improvident or ill-advised opinion being issued on an unbriefed issue." *United States v. Cisson*, 33 F.4th 185, 191 (4th Cir. 2022) (cleaned up). This rule reflects the "reality" that courts cannot

"expect litigants, like fortune tellers peering into their crystal balls, to predict what we might hold in future cases." *Id.* at 192.

Intervening precedent has changed this case. Before the district court ruled on the parties' cross-motions for summary judgment, this Court had found—twice—an enforceable right in the Medicaid Act's any-qualified-provider provision. *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 699 (4th Cir. 2019); *Planned Parenthood S. Atl. v. Kerr*, 27 F.4th 945, 953 (4th Cir. 2022), *vacated by Kerr v. Planned Parenthood S. Atl.*, 143 S. Ct. 2633 (2023). On remand in *Kerr*, the Court reaffirmed its holding. *Planned Parenthood S. Atl. v. Kerr*, 95 F.4th 152, 165 (4th Cir. 2024), *rev'd sub nom. Medina*, 606 U.S. 357. *Medina* reversed. So Fourth Circuit precedent barred the argument until the Supreme Court held otherwise. West Virginia Medicaid can now rightly raise the argument now that it is "available." *United States v. Smithers*, 92 F.4th 237, 247 (4th Cir. 2024).

*Third*, even if it doesn't consider the issue jurisdictional or properly presented, the Court has discretion to raise and decide issues *sua sponte*. That's especially so when the issue is "clearly antecedent to disposition of this case." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 37 (1991) (Stevens, J., dissenting); *see also Arcadia, Ohio v. Ohio Power Co.*, 498 U.S.

73, 77 (1990) (deciding "another question" not raised by the parties because it was "antecedent … and ultimately dispositive of the present dispute").  That's because "a court properly asked to construe a law has the constitutional power to determine whether the law exists."  *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993).  Anything "contrary … would permit litigants, by agreeing on the legal issue presented, to extract the opinion of a court … that would be difficult to characterize as anything but advisory."  *Id.* at 447.

"[P]rudence" doesn't "oblige [this Court] to treat the unasserted argument … as having been waived."  *Id.*  Doing so would not only cast aside an issue antecedent to disposing of Plaintiffs' Medicaid Act claim, but it would also require the court to ignore *Medina*'s new binding law.  So by addressing the existence of a cause of action, the Court won't "stray beyond its constitutional or prudential boundaries."  *Id.*

Indeed, the Supreme Court recognizes that there "may always be exceptional cases or particular circumstances which will prompt [an] appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court … below."  *Hormel v. Helvering*, 312 U.S. 552, 557 (1941).  An intervening Supreme Court decision

is one such "particular circumstance[]." *Id.* at 559 (holding that appellate court should have considered argument because Supreme Court "had not yet handed down" relevant decision when trial court ruled). As already explained, that's the "particular circumstance[]" here. *Id.* So even if West Virginia Medicaid had somehow abandoned any argument about the lack of a private right of action, the Court would still be empowered to address it on its own. Even more so now that "the issue is squarely presented and fully briefed." *Carlson v. Green*, 446 U.S. 14, 17 n.2 (1980). "[T]he interests of judicial administration will be served by addressing the issue on its merits." *Id.*

## CONCLUSION

The Court should reverse the judgment below.

Respectfully submitted,

LOU ANN S. CYRUS
KIMBERLY M. BANDY
ROBERTA F. GREEN

SHUMAN MCCUSKEY SLICER
PLLC
P.O. BOX 3953
CHARLESTON, WV 25339
(304) 345-1400

JOHN B. MCCUSKEY
  *Attorney General*

/s/ Caleb B. David
CALEB B. DAVID
  *Deputy Solicitor General*
  *Counsel of Record*

OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
Phone: (304) 558-2021
caleb.b.david@wvago.gov

Dated: December 23, 2025

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

1.      This supplemental brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 3,144 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as required by Fed. R. App. 27(d)(1)(E), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

*/s/ Caleb B. David*
Caleb B. David