# In the United States Court of Appeals for the Fourth Circuit

SHAUNTAE ANDERSON, individually and on behalf of
all others similarly situated,

*Plaintiff-Appellee,*

v.

WILLIAM CROUCH, in his official capacity as Cabinet Secretary of the West
Virginia Department of Health and Human Resources; et al.,

*Defendants-Appellants.*

On Appeal from the U.S. District Court for the Southern District of West Virginia,
No. 3:20-cv-00740

## PLAINTIFF-APPELLEE'S SECOND SUPPLEMENTAL BRIEF

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585

Tara L. Borelli
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1 West Court Square, Ste. 105
Decatur, GA 30030
Phone: 470-225-5341

Anna P. Prakash
NICHOLS KASTER, PLLP
80 South 8th Street, Suite 4700
Minneapolis, MN 55402
Phone: 612-256-3200

Walt Auvil
THE EMPLOYMENT LAW CENTER, PLLC
1208 Market Street
Parkersburg, WV 26101
Phone: 304-485-3058

*Additional counsel for Plaintiff-Appellee listed on following page.*

Nora Huppert
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3656 North Halsted Street
Chicago, IL 60613
Phone: 312-663-4413

*Counsel for Plaintiff-Appellee*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..........................................................i

TABLE OF AUTHORITIES ................................................iii

INTRODUCTION ...............................................................1

ARGUMENT ......................................................................3

I.      Defendants Affirmatively Waived Any Argument About Whether the
        Medicaid Act's Availability and Comparability Provisions Are
        Enforceable and Therefore This Court Should Not Reach Such Issue. ........3

        A.  This Court Should Not Reach an Issue Defendants Have Waived,
            Which is Distinct From Forfeiture. ..........................................4

        B.  Whether the Medicaid Act's Availability and Comparability Provisions
            Are Enforceable Does Not Present a Jurisdictional Question.................6

        C.  Defendants Affirmatively and Expressly Waived Any Argument
            Pertaining to the Enforceability of the Medicaid Act Provisions at
            Issue in This Case. ..................................................................7

        D.  Even if Defendants' Abandonment of the Enforceability Issue Could
            Be Deemed Unintentional and Therefore Forfeiture, No Extraordinary
            Circumstances Justify Review By This Court at This Juncture.............10

        E.  Considering Enforceability of the Medicaid Act Provisions at Issue
            Would Not Serve the Interests of Justice and Would Prejudice Plaintiff
            and the Class..........................................................................13

        F.  None of the Circumstances in Which This Court Has First Reached
            an Issue Passed on Below are Present Here. .........................................15

G. Should the Court Believe That Consideration of Enforceability of the Medicaid Act's Provisions at Issue Here is Warranted, Remand is the Proper Course of Action. .......................................................................... 18

II.   On the Merits, Plaintiff's Comparability and Availability Claims Under the Medicaid Act Are Enforceable. ................................................. 19

    A.   *Medina* Did Not Change Existing Supreme Court Precedent. ............ 19

    B.   *Medina* and *Talevski* Confirm That the Comparability and Availability Provisions Create Privately Enforceable Rights. ................................. 22

        1.   *Talevski* and *Medina* demonstrate how it can result in different outcomes for different provisions. .................................................. 22

        2.   The availability and comparability provisions are privately enforceable. ...................................................................................... 24

        3.   The remaining factors considered by *Medina* do not weigh against private enforcement of the provisions at issue here. ........................ 27

CONCLUSION .................................................................................................. 31

CERTIFICATE OF COMPLIANCE .................................................................. 33

CERTIFICATE OF SERVICE ........................................................................... 34

# TABLE OF AUTHORITIES

**Cases**

*Angela R. by Hesselbein v. Clinton*,
  999 F.2d 320 (8th Cir. 1993). ......................................................................7

*Arakas v. Comm'r, Soc. Sec. Admin.*,
  983 F.3d 83 (4th Cir. 2020) .......................................................................15

*Barnes v. Gorman*,
  536 U.S. 181 (2002)....................................................................................20

*Berghuis v. Thompkins*,
  560 U.S. 370 (2010)......................................................................................8

*Blessing v. Freestone*,
  520 U.S. 329 (1997)......................................................................................1

*Bontrager v. Ind. Fam. & Soc. Servs. Admin.*,
  697 F.3d 604 (7th Cir. 2012) .......................................................................3

*Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.*,
   331 U.S. 519 (1947)..................................................................................30

*Burch v. P.J. Cheese, Inc.*,
  861 F.3d 1338 (11th Cir. 2017) ................................................................. 16

*Burks v. Lasker*,
  441 U.S. 471 (1979)......................................................................................7

*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979)). ...................................................................................2

*City of Rancho Palos Verdes v. Abrams*,
  544 U.S. 113 (2005)....................................................................................21

*Clark v. Sweeney*,
  No. 25–52, 607 U.S. ---, 2025 WL 3260170 (U.S. Nov. 24, 2025) ............. 14

*Davis v. Shah,*
821 F.3d 231 (2d Cir. 2016)...............................................................3

*De Simone v. VSL Pharms., Inc.,*
36 F.4th 518 (4th Cir. 2022) .............................................................8

*Dick v. Oregon,*
140 S. Ct. 2712 (2020) ....................................................................18

*Doe v. Kidd,*
501 F.3d 348, 360 (4th Cir. 2007). ...................................................7

*Gatlin v. Contra Costa Cnty.,*
796 F.Supp.3d 622 (N.D. Cal. 2025) ...............................................20

*Gonzaga University v. Doe,*
536 U.S. 273 (2002)...........................................................................1

*Greenlaw v. United States,*
554 U.S. 237 (2008)..........................................................................14

*Health & Hosp. Corp. of Marion Cnty., Indiana v. Talevski,*
599 U.S. 166 (2023)..........................................................................24

*Henderson ex rel. Henderson v. Shinseki,*
562 U.S. 428 (2011)..........................................................................29

*Hicks v. Ferreyra,*
965 F.3d 302 (4th Cir. 2020) ...........................................................11

*Holland v. Big River Minerals Corp.,*
181 F.3d 597 (4th Cir. 1999) ........................................................... 17

*In re Marriott Int'l, Inc.,*
78 F.4th 677 (4th Cir. 2023) ............................................................19

*In re Under Seal,*
749 F.3d 276 (4th Cir. 2014) ...........................................................12

*Isaac A. v. Carlson,*
775 F. Supp. 3d 1296 (N.D. Ga. 2025) ........................................................... 25

*King v. Smith,*
392 U.S. 309 (1968) ...................................................................................19

*Kontrick v. Ryan,*
540 U.S. 443 (2004) ...................................................................................8

*Lomax* v. *Ortiz-Marquez,*
140 S. Ct. 1721 (2020) ...............................................................................14

*Medina v. Planned Parenthood South Atlantic,*
606 U.S. 357 (2025) ...................................................................................1

*Pennhurst State Sch. & Hosp. v. Halderman,*
451 U.S. 1 (1981) .......................................................................................20

*Planned Parenthood of Greater Texas v. Kaufman,*
981 F.3d 347 (5th Cir. 2020) .......................................................................24

*Planned Parenthood S. Atl. v. Baker,*
941 F.3d 687 (4th Cir. 2019) ...................................................................... 15

*Rodriguez v. DeBuono,*
175 F.3d 227 (2d Cir. 1999) .......................................................................7

*S.D. ex rel. Dickson v. Hood,*
391 F.3d 581 (5th Cir. 2004) .......................................................................3

*Sabree ex rel. Sabree v. Richman,*
367 F.3d 180 (3d. Cir. 2004) .......................................................................3

*Shalala v. Ill. Council on Long Term Care,*
529 U.S. 1 (2000). ......................................................................................1

*Soto v. United States,*
605 U.S. 360 (2025) ...................................................................................29

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998)...........................................................................6

*Stewart v. Hall*,
    770 F.2d 1267 (4th Cir. 1985) ....................................................12

*Stokes v. Stirling*,
    64 F.4th 131 (4th Cir. 2023). ........................................................3

*United States v. Cabrera-Rivas*,
    142 F.4th 199 (4th Cir. 2025) ........................................................6

*United States v. Chittenden*,
    896 F.3d 633 (4th Cir. 2018) ......................................................17

*United States v. Holness*,
    706 F.3d 579 (4th Cir. 2013). ........................................................6

*United States v. Jones*,
    308 F.3d 425 (4th Cir. 2002) ......................................................11

*United States v. Leeson*,
    453 F.3d 631 (4th Cir. 2006) ......................................................11

*United States v. One Male Juvenile*,
    149 F. App'x 213 (4th Cir. 2005) ................................................18

*United States v. Parham*,
    129 F.4th 280 (4th Cir. 2025) ......................................................19

*United States v. Pittman*,
    125 F.4th 527 (4th Cir. 2025) ......................................................12

*United States v. Rubin*,
    743 F.3d 31 (2d Cir. 2014)...........................................................11

*United States v. Sineneng-Smith*,
    590 U.S. 371 (2020)....................................................................13

*United States v. Vanegas*,
   612 F. App'x 664 (4th Cir. 2015) ....................................................................18

*Vincent v. Bondi*,
   127 F.4th 1263 (10th Cir. 2025) ....................................................................18

*Waskul v. Washtenaw Co. Comty. Mental Health*,
   979 F.3d 426 (6th Cir. 2020) ...........................................................................3

*Watson v. Weeks*,
   436 F.3d 1152, 1159-60 (9th Cir. 2006) ........................................................22

*Wilder v. Virginia Hospital Association*,
   496 U.S. 498 (1990) ..........................................................................................1

*Williams v. Cheltenham Sch. Dist.*,
   No. 25-cv-3395,  2025 WL 2712217, at *3 (E.D. Penn. Sept. 23, 2025) ......20

*Wood v. Milyard*,
   566 U.S. 463 (2012) ..........................................................................................4

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) ........................................................................................11

**Statutes**

20 U.S.C. § 1681 ...................................................................................................26

42 U.S.C. § 1320 ...................................................................................................28

42 U.S.C. § 1396 .......................... 7, 16, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 31

42 U.S.C. § 1983 ................................. 2, 3, 4, 7, 19, 20, 21, 22, 24, 25, 29, 30, 31

42 U.S.C. § 2000 ...................................................................................................26

**Other Authorities**

H.R. Rep. No. 103-761, at 819 (1994) (Conf. Rep.) ............................................28

Oral Argument at 15:18-15:32, *Fain v. Crouch*, 22-1927, (Mar. 7, 2023),
    https://www.ca4.uscourts.gov/OAarchive/mp3/22-1927-20230307.mp3.........9

Oral Argument at 4:21-4:31*, Anderson v. Crouch,* 22-1927, (Dec. 9, 2025)
    https://www.ca4.uscourts.gov/OAarchive/mp3/22-1927-20251209.mp3.......10

**INTRODUCTION**

In accordance with the Court's December 9, 2025 Order, Ms. Anderson respectfully submits this supplemental brief "on the issue whether Medicaid creates a private action of the kind filed by the plaintiffs in this case." Doc. 157.

Defendants-Appellants have affirmatively waived, not just forfeited, any argument that there is no private right of action to enforce the Medicaid Act's availability and comparability provisions. And "[u]nlike a forfeited issue, a court does not have discretion to reach an issue that a party has waived." *Stokes v. Stirling*, 64 F.4th 131, 136 n.3 (4th Cir. 2023). Even if Defendants' abandonment of this argument had been unwitting, this case does not present the exceptional circumstances under which the Court should reach this question. *Id.* at 141.

Regardless, the Medicaid Act provisions in this case meet the enforceability test set forth in *Gonzaga University v. Doe*, 536 U.S. 273 (2002). The Supreme Court's recent decision in *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025), does not change the result. *Medina* cleared up confusion in the lower courts by instructing them, once and for all, to stop applying less demanding enforcement tests set forth in cases like *Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990), and *Blessing v. Freestone*, 520 U.S. 329 (1997). *See Medina*, 606 U.S. at 376. *Medina* did not, however, dramatically alter the *Gonzaga* test *sub silentio*; the Court does not do that. *See Shalala v. Ill. Council on Long Term Care*,

529 U.S. 1, 18 (2000). Rather, *Medina*, which found a provision not at issue here to be not enforceable, reaffirmed *Gonzaga*'s test, 606 U.S. at 372-76, and reiterated that it was "simply applying the same test" established in *Gonzaga*. *Medina*, 606 U.S. at 385 n.9. In fact, *Medina* was the second case in two years that reaffirmed *Gonzaga*. *See Health & Hosp. Corp. of Marion Cnty.*, *Indiana v. Talevski*, 599 U.S. 166, 180-81 (2023) (allowing plaintiffs to enforce to provisions of the Medicaid Nursing Home Reform Act ("NHRA")).

The *Gonzaga* test does not require any talismanic words. Rather, courts must apply traditional statutory construction tools, *on a provision-by-provision basis*, to determine whether the provision in question is "phrased in terms of the persons benefited," "with an *unmistakable focus* on the benefited class," using "clear and unambiguous terms." *Gonzaga*, 536 U.S. at 274, 284, 290 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 691 (1979)). Anything less is not rights-creating language enforceable under 42 U.S.C. § 1983. The Medicaid Act contains thousands of provisions, and the circuit courts have found only a "tiny handful" of them meet *Gonzaga*'s demanding test. *Medina*, 606 U.S. at 414-15 (Jackson, dissenting). The provisions at issue here are among that tiny handful. Every federal circuit court of appeals to have assessed them under *Gonzaga* has concluded that they are enforceable.

*Medina* did not establish a bright-line test (for example, one that requires the statute to use the word "right") or upend decades of enforcement decisions applying *Gonzaga*'s demanding provision-by-provision approach. A ruling otherwise would misapply *Medina* and repudiate the enforcement rights of not just the plaintiffs here but of people with disabilities who need supports to live in their communities, *Waskul v. Washtenaw Co. Comty. Mental Health*, 979 F.3d 426 (6th Cir. 2020); individuals who need medical supplies and equipment to walk, *Davis v. Shah*, 821 F.3d 231 (2d Cir. 2016); people who need medically necessary dental care, *Bontrager v. Ind. Fam. & Soc. Servs. Admin.*, 697 F.3d 604 (7th Cir. 2012); those with intellectual disabilities who want to live in community settings, *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180 (3d. Cir. 2004); and children with disabilities who need health services such as incontinence supplies, *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581 (5th Cir. 2004).

This Court should affirm the District Court's grant for summary judgment to Plaintiff and the Class on their Medicaid Act claims.

## ARGUMENT

**I. Defendants Affirmatively Waived Any Argument About Whether the Medicaid Act's Availability and Comparability Provisions Are Enforceable and Therefore This Court Should Not Reach Such Issue.**

Whether the specific Medicaid Act provisions at issue here are enforceable under 42 U.S.C. § 1983 is a question arising from whether Plaintiff has stated a claim

upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The possible absence of a valid claim does not implicate subject matter jurisdiction. Therefore, Defendants needed to raise the enforceability argument before the district court or their initial brief. They did neither.[1] To the contrary, Defendants affirmatively and expressly waived any such argument when the Court inquired if they had raised it. Defendants have therefore affirmatively waived the argument, and this Court should not reach it.

Even if the Court finds the abandonment was unwitting (it was not), there are no circumstances here under which the Court should reach the argument. And *Medina* does not constitute the kind of intervening change in the law that would render forfeiture irrelevant.

### A. This Court Should Not Reach an Issue Defendants Have Waived, Which is Distinct From Forfeiture.

We start from the well-established principle that "a federal court does not have carte blanche to depart from the principle of party presentation basic to our adversary system." *Wood v. Milyard*, 566 U.S. 463, 472 (2012). Under such premise, "this court does not consider issues raised for the first time on appeal, absent exceptional

---

[1] *Medina* did not overrule any precedent regarding the enforceability of the Medicaid Act provisions at issue in this case, in this Circuit or otherwise, such that Defendants had no reason to raise enforceability prior to *Medina*. And nothing about this Circuit's prior application of the Section 1983 enforceability test with regard to *other* provisions prevented Defendants from acknowledging *Gonzaga* and asking for it to be applied differently here.

circumstances." *Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020) (alterations and quotation omitted). In other words, under this Court's "standard forfeiture and waiver principles," this Court will only "consider an issue not raised before the district court only in 'exceptional circumstances' and reverse only if the proponent of the newly discovered argument can establish 'fundamental error.'" *Id.* at 311. Such a circumstance includes whether the court has subject-matter jurisdiction, "which may be raised by a party at any time or by a court on its own initiative." *Id.* at 310. What is more, the fundamental error standard is a "rigorous standard" that presents "an even higher bar than the plain error standard applied in criminal cases, … and the burden is on the party who has failed to preserve an argument to show that the standard is met." *Id.* (quotation omitted).

Some further clarification of the rules governing waiver and forfeiture is in order. "'Forfeiture' refers to a party's inadvertent failure to raise an argument; a court has discretion to reach a forfeited issue." *Stokes*, 64 F.4th at 136 n.3. The court may do so only in "extraordinary circumstances," after assuring itself that the other party "is not significantly prejudiced by the delayed focus on the … issue, and determin[ing] … the interests of justice would be better served by reaching it." *Id.* at 141 (quotations omitted).

"By contrast, 'waiver' refers to a knowing, and intelligent decision to abandon an issue." *Id.* at 136 n.3. "Unlike a forfeited issue, a court does not have discretion

to reach an issue that a party has waived." *Id.*; *see also United States v. Cabrera-Rivas*, 142 F.4th 199, 220 (4th Cir. 2025) (distinguishing between waiver and forfeiture, and noting that "waived claims can't be reviewed on appeal—de novo, for plain error, or in any other way").

Enforcing these waiver and forfeiture rules is not a matter of convenience. They reflect the principle that appellate courts should "apply [these] rules on a consistent basis" so that they "provide a substantial measure of fairness and certainty to the litigants who appear before us." *United States v. Holness*, 706 F.3d 579, 592 (4th Cir. 2013).

### B. Whether the Medicaid Act's Availability and Comparability Provisions Are Enforceable Does Not Present a Jurisdictional Question.

Whether the Medicaid Act provisions at issue here—the availability and comparability requirements—are enforceable (and they are, *see infra*) does not present a jurisdictional question. As a result, such an argument is subject to waiver and forfeiture.

"It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction, *i.e.*, the courts' statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). That is particularly the case with the Medicaid Act provisions. Whether a Medicaid Act provision is enforceable

under § 1983 "go[es] to the merits … not to the district court's jurisdiction." *Angela R. by Hesselbein v. Clinton*, 999 F.2d 320, 324 (8th Cir. 1993). Accordingly, the Eighth Circuit has declined to address whether certain Medicaid provisions were enforceable, despite an intervening Supreme Court decision finding a similar provision was unenforceable, because the matter was not jurisdictional. Similarly, the Second Circuit has observed that determining whether a Medicaid Act provision gives rise to an "enforceable private right of action … does not implicate jurisdiction." *Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999).

This Court has applied the same principle by implication. For example, in *Doe v. Kidd*, this Court did "not find it necessary to decide whether § 1396a(a)(23) confers a private right on individuals that may be enforced under § 1983," and instead assumed that it did and addressed the merits of the claim. 501 F.3d 348, 360 (4th Cir. 2007). In doing so, the Court cited the Supreme Court's decision in *Burks v. Lasker*, which held that the "question whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided." 441 U.S. 471, 476 n.5 (1979).

### C. Defendants Affirmatively and Expressly Waived Any Argument Pertaining to the Enforceability of the Medicaid Act Provisions at Issue in This Case.

Defendants have affirmatively waived any argument regarding whether the Medicaid provisions at issue in this case are enforceable and as such, the Court

should not reach it "*de novo, for plain error, or in any other way*." *Cabrera-Rivas*, 142 F.4th at 220 (4th Cir. 2025). Waiver can be "implied from all the circumstances," *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010), though here, on top of being intentional, the waiver was explicit.

As a general rule, "the parties' litigation conduct" determines what issues are properly before a court, and a defense may be waived or forfeited "if the party asserting [it] waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). Defendants' words and course of action throughout this litigation make pellucidly clear that they have affirmatively waived any argument as to whether the Medicaid provisions at issue in this case are enforceable.

First, Defendants never raised enforceability in the district court. This alone is sufficient. *See De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 528 (4th Cir. 2022) ("[A] party may not leave the district court without "any signal" that it contests a fact or point of law."). That is particularly important here because *Medina* did not break any new ground.

As noted, *Medina* "simply applie[d]" the *Gonzaga* test. *Medina*, 606 U.S. at 385. This test has existed for nearly a quarter of century, and Defendants cannot claim that it is new or that *Medina* represented a dramatic shift in the law. All that *Medina* and *Talevski* did was "reaffirm[] that *Gonzaga* sets forth our established method for determining whether a spending-power statute confers individual rights."

*Medina*, 606 U.S. at 376 (quotation omitted). Defendants' failure to raise enforceability in the district court was therefore knowing and not unintentional or inadvertent.

Second, Defendants never raised enforceability on their opening, reply, or supplemental briefs—an intentional and conscious choice that demonstrates active waiver of any enforceability argument.

Third, when asked about enforceability during the first oral argument in this appeal, Defendants expressly disclaimed ever raising enforceability as an issue and therefore explicitly and affirmatively abandoned that argument. When the Court asked, "you have not argued that there is no cause of action under the Medicaid Act, have you?," Defendants' counsel responded, "We have not taken that position, Your Honor."[2] This is a most damning admission as it represents an "express disclaime[r]" "[t]hat bars [this Court's] review." *Cabrera-Rivas*, 142 F.4th at 220.

Fourth, even after *Medina* was decided, Defendants neither raised enforceability through a 28(j) letter[3] nor in their October 17 supplemental brief

---

[2] Mar. 7, 2023 Oral Argument, https://www.ca4.uscourts.gov/OAarchive/mp3/22-1927-20230307.mp3 (at 15:18-15:32).

[3] To be sure, an argument based upon a particular Supreme Court case made for the first time in a letter styled as notice of supplemental authority, submitted pursuant to Federal Rule of Appellate Procedure 28(j), would be waived on appeal. *See United States v. Leeson,* 453 F.3d 631, 638 n. 4 (4th Cir. 2006); *United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002).

ordered by this Court.  This is so even though the Court asked about enforceability in the March 2023 argument.  And this is so even though Defendants' October 17 supplemental brief cites *Medina* (*see* Dkt. 148 at 20, 21) but does not argue or imply that the Medicaid Act provisions at issue are unenforceable.

Fifth, during the December 9 oral argument, Defendants again conceded that they had never raised enforceability in this case.[4]  It is too late in the game for the Court to seek to bail out Defendants from their affirmative and knowing abandonment of a non-jurisdictional argument (albeit an unsuccessful one, *see infra*) that has always been readily available to them.

In sum, Defendants did not just unwittingly abandon any argument regarding enforceability, they repeatedly made the choice to not raise enforceability.  This constitutes waiver, and the Court must hold Defendants to their choices.

**D.** **Even if Defendants' Abandonment of the Enforceability Issue Could Be Deemed Unintentional and Therefore Forfeiture, No Extraordinary Circumstances Justify Review By This Court at This Juncture.**

Even if Defendants' abandonment could be deemed unwitting such that it could be deemed forfeiture, no extraordinary circumstances exist here to abandon

---

[4] Dec. 9, 2025 Oral Argument, https://www.ca4.uscourts.gov/OAarchive/mp3/22-1927-20251209.mp3 (at 4:21-4:31) ("Respecting the procedural rules, we didn't go down that road because we had not briefed that at the district court and because this Court had not asked us to ….").

this Court's well-established principle that it should not reach arguments first raised on appeal.

First, the fact that the enforceability question concerns whether a cause of action is present does not excuse forfeiture. Take this Court's precedent in *Hicks v. Ferreyra*. There the defendant officers argued that their case presented a "new *Bivens* context," and that allowing it to proceed would run afoul of *Ziglar v. Abbasi*, 582 U.S. 120 (2017). The Court, however, declined to reach the issue because "the availability of a *Bivens* cause of action does not fall within th[e] exception" to the rule that "'the parties' litigation conduct' determines what issues are properly before a court, and a defense may be 'forfeited if the party asserting it waits too long to raise the point." *Hicks*, 965 F.3d at 310 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004), original alterations omitted). That is because whether a cause of action exists "is not an issue that implicates a court's subject-matter jurisdiction." *Hicks*, 965 F.3d at 310. And as explained earlier, whether a cause of action exists under the Medicaid Act's availability and comparability provisions is a jurisdictional question. *See Angela R.*, 999 F.2d at 324; *DeBuono*, 175 F.3d at 233.

This is not dissimilar from the criminal context where courts of appeals have rejected the notion that "the failure to state an offense under the charged statute deprives a district court of jurisdiction." *United States v. Rubin*, 743 F.3d 31, 37-38 (2d Cir. 2014). This is a principle that this Court has likewise applied. Take *United*

*States v. Pittman*, 125 F.4th 527 (4th Cir. 2025), earlier this year. There the Court rejected the Defendants' "assertion that [18 U.S.C.] Section 844(f)(1) does not reach his conduct fails because he *waived* any such challenge by pleading guilty." *Id.* at 530. The Court reasoned that a defendant's guilty plea is sufficient to *waive* "the *proper interpretation of the statute* of conviction." *Id.* at 530-31. Here, through their affirmative representations and conduct, Defendants have *waived* any enforceability argument and thus the Court should likewise not entertain their "statutory construction arguments." *Id.* at 531.

Second, just as "the officers [in *Hicks*] provided no explanation at all for why they did not raise their *Bivens*-extension argument in the district court," *Hicks*, 965 F.3d at 311, Defendants here cannot explain why they did not raise enforceability in the district court or any other point thereafter. *See supra* note 1.

Third, like in *Hicks*, Defendants have never "contended at all with [this Court's] 'fundamental error' standard or attempted to show that they can meet it here." 965 F.3d at 311. Such failure to argue on appeal for fundamental error "marks the end of the road for [an] argument for reversal not first presented to the district court." *In re Under Seal*, 749 F.3d 276, 292 (4th Cir. 2014) (quotation marks and citations omitted). In a civil case, a "fundamental error" is one that is "so serious and flagrant that it goes to the very integrity" of the proceedings. *Stewart v. Hall*, 770 F.2d 1267, 1271 (4th Cir. 1985) (quotation omitted). That is not the case here.

**E.    Considering Enforceability of the Medicaid Act Provisions at Issue Would Not Serve the Interests of Justice and Would Prejudice Plaintiff and the Class.**

To find an extraordinary circumstance that allows deviation from this Court's standard rule not to consider forfeited arguments, the Court must assure itself that Plaintiff and the Class are "not significantly prejudiced by the delayed focus on the issue," and find that the interests of justice are better served by reaching the issue. *Stokes*, 64 F.4th at 141.  Neither factor is present here.

First, as to prejudice, this case has now been going on for five years.  Despite having ample opportunity, at no point before the third round of appellate oral argument did Defendants raise the enforceability of the relevant Medicaid Act provisions, and only after being prompted to do so by the Court.  Plaintiff has expended substantial resources in this litigation.  For this Court to consider enforceability (which is not jurisdictional) now, even after Defendants have never pressed this issue, would constitute the proverbial pulling of the rug out from under Plaintiff's feet.  It would also excuse (without any real basis) Defendants' failure to make these arguments.

This Court is a court of review that is bound by the principle of party presentation.  *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation.").  Thus, "in both civil and criminal cases, in the first instance and on

appeal …, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). This Court "should not[] sally forth each day looking for wrongs to right." *Sineneng-Smith*, 590 U.S. at 376. This is particularly so when a party has knowingly, affirmatively, and intelligently waived an argument. Here, by considering enforceability despite Defendants never pressing such an argument (and expressly waiving it), the Court would no longer be serving as court of review but would be doing Defendants' job for them, substantially prejudicing Plaintiff and the Class.

Just one month ago, the Supreme Court reversed this Court for deviating from these principles and noted that "[t]he parties frame the issues for decision, while the court serves as neutral arbiter of matters the parties present." *Clark v. Sweeney*, No. 25–52, 607 U.S. ---, 2025 WL 3260170, at *1 (U.S. Nov. 24, 2025). In doing so, the Supreme Court cautioned: "To put it plainly, courts 'call balls and strikes'; they don't get a turn at bat." *Id.* (quoting *Lomax* v. *Ortiz-Marquez*, 140 S. Ct. 1721, 1724 (2020)).

Simply put, under the principle of party presentation and the rules of waiver and forfeiture, Defendants need to live with their choices.

Second, as to the interests of justice, requiring Defendants to abide by the Medicaid Act's availability and comparability provisions, which they are legally

bound to follow regardless of whether they are privately enforceable, would serve the interests of justice. What is more, justice is served when the Medicaid Act's purposes are given effect and vulnerable West Virginians, like Plaintiff and the Class, are able to access the healthcare that they need.

In contrast, the interests of justice would not be served by this Court deviating from the principle of party presentation here. The loss of health care coverage for Ms. Anderson and the Class would result in harm. *See Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 707 (4th Cir. 2019). Such harm should not be the result of the Court deviating from its standard rules and practices to assist Defendants, after Defendants affirmatively waived an argument.

## F. None of the Circumstances in Which This Court Has First Reached an Issue Passed on Below are Present Here.

In addition to the above, when there is forfeiture (which, again, is distinct from waiver, which is present here), this Court has recognized that a panel may first reach an issue not passed on below: (1) "where the proper resolution is beyond any doubt"; (2) "where injustice might otherwise result," 3) "when refusal to review would constitute plain error"; or (4) "where there is an intervening change in the case law." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 105 (4th Cir. 2020). None of these circumstances apply here.

*One*. The proper resolution of these issues is not beyond any doubt in favor of Defendants. *Medina* did not concern the provisions at issue in this case. Here, Ms.

Anderson has asserted claims under the availability provision (42 U.S.C. § 1396a(a)(10)(A)) and the comparability provision (42 U.S.C. § 1396a(a)(10)(B)) of the Medicaid Act, whereas the plaintiffs in *Medina* sought to enforce the free choice of provider provision, 42 U.S.C. § 1396a(a)(23). Applying the *Gonzaga* test (reaffirmed in *Talevski* and *Medina*), other circuits have consistently found these provisions are enforceable.

*Two*. While enforceability of a specific provision of the Medicaid Act is an issue of law, failure to consider it would not result in a miscarriage of justice. Defendants had ample opportunity to raise the matter. *See Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1352 (11th Cir. 2017) (because the abandoning party had "ample opportunity" to raise the argument, refusal to entertain it would not result in a miscarriage of justice). Defendants were well aware of and had ample opportunity to raise the applicability of the *Gonzaga* test below, their failure to do so cannot be characterized as a miscarriage of justice. Moreover, there is no miscarriage of justice in having Defendants abide by the terms of the Medicaid Act, which they are obliged to do.

*Three*. Refusal to review this issue would not constitute plain error. Defendants never raised this issue and as elucidated herein it is not evident—let alone, plainly so—that the Medicaid provisions at issue here are not enforceable.

*Four.*  There is no intervening change in the case law, at least as this Court has defined this exception.  The intervening-change-in-case-law exception "applies only if the issue was not previously available—meaning there was strong precedent prior to the change, such that the failure to raise the issue was not unreasonable and the opposing party was not prejudiced by the failure to raise the issue sooner." *Stokes*, 64 F.4th at 141 n.6; *see also United States v. Chittenden*, 896 F.3d 633, 639 (4th Cir. 2018); *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605–06 (4th Cir. 1999).  Here, the *Gonzaga* test applied in *Medina* was well-established for over two decades and available to Defendants.  And, as noted, *Medina* did not break new ground.  *See infra* Section II.A.  This is not dissimilar to the situation in *Hicks* where *Abbasi* "merely clarified what already was well-established case law."  *Hicks*, 965 F.3d at 311.  Simply put, *Medina* does not constitute an intervening change in the case law to warrant consideration of an argument that Defendants abandoned.

The fact that the Supreme Court granted *certiorari*, vacated, and remanded this case for reconsideration in light of its decision in *Skrmetti* but not *Medina* speaks volumes.  If *Medina* constituted such an intervening change in the case law—or resolved this issue beyond any doubt in favor of Defendants—the Supreme Court's GVR Order would have presumably, at least, remanded for reconsideration in light of that decision.  It did not.

In any event, as Plaintiff explained in her October 17 Supplemental Brief (Dkt. 147 at 3-4), a GVR Order "doesn't necessarily signal a disagreement with the panel's reasoning or result." *Vincent v. Bondi*, 127 F.4th 1263, 1264 n.1 (10th Cir. 2025). And as this Court has explained, "a decision to grant certiorari, vacate, and remand for further consideration in light of new Supreme Court precedent does not resolve questions of waiver or forfeiture." *Stokes*, 64 F.4th at 143; *see also*, *e.g.*, *Dick v. Oregon*, 140 S. Ct. 2712, 2712 (2020) (mem.) (Alito, J., concurring in decision to grant, vacate, and remand) ("I concur in the judgment on the understanding that the Court is not deciding or expressing a view on whether the question was properly raised below but is instead leaving that question to be decided on remand."). Indeed, in previous cases returned to this Court following a GVR order, this Court "ha[s] reaffirmed [its] prior opinion because a litigant had waived or forfeited the relevant issue." *Stokes*, 64 F.4th at 143 (citing *United States v. Vanegas*, 612 F. App'x 664, 666 (4th Cir. 2015) (per curiam), and *United States v. One Male Juvenile*, 149 F. App'x 213, 214 (4th Cir. 2005) (per curiam)).

Simply put, the intervening-change-in-case-law exception is inapplicable here.

**G.     Should the Court Believe That Consideration of Enforceability of the Medicaid Act's Provisions at Issue Here is Warranted, Remand is the Proper Course of Action.**

Should the Court find that consideration of the enforceability question is warranted, notwithstanding Defendants' waiver of this argument, the Court should not take up this question for the first time on appeal. "[M]indful" that this Court is "a court of review, not of first view," it should decline the invitation to address this question "without [having had] the benefit of district court consideration." *United States v. Parham*, 129 F.4th 280, 289 (4th Cir. 2025) (quotation omitted). The Court should "follow [its] ordinary course and leave to the district court the first opportunity to perform the applicable analysis." *In re Marriott Int'l, Inc.*, 78 F.4th 677, 688 (4th Cir. 2023) (quotation omitted).

## II. On the Merits, Plaintiff's Comparability and Availability Claims Under the Medicaid Act Are Enforceable.

The availability (42 U.S.C. § 1396a(a)(10)(A)) and comparability (42 U.S.C. § 1396a(a)(10)(B)) provisions of the Medicaid Act are enforceable pursuant to 42 U.S.C. § 1983. *Medina* did not change the applicable test for determining whether a private right of action exists; and under the *Gonzaga* test, which *Medina* reaffirmed, the comparability and availability provisions can be enforced by private parties like Plaintiff and the Class here.

### A. *Medina* Did Not Change Existing Supreme Court Precedent.

From the adoption of the Medicaid Act, Congress and the states understood that certain provisions of that Act could be enforced by individuals pursuant to Section 1983. *See*, *e.g.*, *King v. Smith*, 392 U.S. 309, 311, 312 n.4 (1968) (allowing

recipients to enforce a provision in the Social Security Act, of which Medicaid is a part); *Talevski*, 599 U.S. at 180 n.8 (noting that the text of § 1983 supplies the necessary notice to states that they can be sued). And though the Court has acknowledged that enforcement of Spending Clause enactments like Medicaid typically rest with the federal government, *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 2, 17 (1981), that "does not imply … that suits under Spending Clause legislation are suits in contract" between the states and federal government such that they cannot be enforced by private parties. *Barnes v. Gorman*, 536 U.S. 181, 188 n.2 (2002).

Consistent with this, twenty-three years ago, the Court established the test for enforceability under § 1983 as it applies to Spending Clause legislation. *See Gonzaga*, 536 U.S. 273; *see also Medina*, 606 U.S. at 385 n.9 (*Medina* "simply applies the same test this Court applied in *Gonzaga* and again in *Talevski*"); *accord Williams v. Cheltenham Sch. Dist.*, No. 25-cv-3395, 2025 WL 2712217, at *3 (E.D. Penn. Sept. 23, 2025) (stating "*Medina* did not announce a new rule but rather reaffirmed the analytical framework it earlier defined in *Gonzaga* and applied in *Talevski*."); *Gatlin v. Contra Costa Cnty.*, 796 F.Supp.3d 622, 625 (N.D. Cal. 2025) (denying motion to reconsider decision allowing Social Security Act provision to be enforced, finding *Medina* did not overrule previous decision that "integrat[ed] *Gonzaga* into its analysis"). *Gonzaga* requires a statute to contain "an

unambiguously conferred right," and not merely a vague benefit or interest. 536 U.S. at 283. An enforceable right will not be found "where a statute by its terms grants no private rights to any identifiable class." *Id*. at 283–84. Rather a statute must use "rights-creating language," *id*. at 287, clearly imparting an "individual entitlement." *Id*. at 284. The inquiry inherently calls for a provision-by-provision application of the analysis, and it sets a "demanding bar." *Talesvki*, 599 US. at 180.

To be sure, the test is "stringent and demanding." *Medina*, 606 U.S. at 368. A provision that clears that bar can be privately enforced unless the defendant establishes "incompatibility" between enforcement under § 1983 and the enforcement scheme Congress has inserted into the substantive statute. *Talevski*, 599 U.S. at 188. The Court's recent pronouncement in *Talevski* is clear: the Medicaid Act does not displace the private enforcement mechanism of § 1983. *Id*.; *see also City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121-22 (2005) (listing Medicaid as a statute that does not foreclose § 1983 enforcement). In short, a Medicaid provision is privately enforceable if it meets *Gonzaga*'s threshold test.

As explained below, the comparability and availability provisions of § 1396a(a)(10) are among the handful of Medicaid requirements that courts, post *Gonzaga*, have found to confer individual rights under § 1983. In fact, in the 23 years since *Gonzaga*, every circuit court to have reviewed these provisions has

concluded that § 1396a(a)(10)(A) and (B) are among the "atypical" laws that create enforceable rights under § 1983. *Talevski*, 599 U.S. at 183.[5]

**B. *Medina* and *Talevski* Confirm That the Comparability and Availability Provisions Create Privately Enforceable Rights.**

The comparability and availability provisions are privately enforceable. On this point, *Talevski* and *Medina* provide valuable guidance: **(1)** both reiterate and apply the *Gonzaga* framework; **(2)** each demonstrates how that framework can result in different outcomes depending on the provision at issue; and **(3)** each shows how the outcome in this case is that the comparability and availability provisions are privately enforceable.

**1. *Talevski* and *Medina* demonstrate how it can result in different outcomes for different provisions.**

*Talevski* assessed two provisions of the NHRA. The first, the unnecessary-restraint provision, states that "a nursing facility must protect and promote the rights of each resident, including … [t]he right to be free from … physical or chemical restraints imposed for the purpose of discipline or convenience and not required to

---

[5] Post-*Gonzaga*, the Third, Fifth, Sixth, Seventh, and Ninth Circuits have held the availability provision confers a private right of action enforceable under § 1983. *See Waskul*, 979 F.3d at 448; *Bontrager*, 697 F.3d at 607; *Watson v. Weeks*, 436 F.3d 1152, 1159-60 (9th Cir. 2006); *Sabree*, 367 F.3d at 183; *Hood*, 391 F.3d at 607. Post-*Gonzaga*, both the Sixth and Second Circuits have held the comparability provision confers a private right of action enforceable under § 1983. *See Waskul*, 979 F.3d 426; *Davis*, 821 F.3d 231. No circuit has found either provision to be unenforceable post-*Gonzaga* or *Talevski*.

treat the resident's medical symptoms." 42 U.S.C. § 1396r(c)(1)(A)(ii). The second, the transfer and discharge notice provision, states that "[a] nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from the facility," unless the nursing facility decides the transfer meets one of six exceptions. *Id*. § 1396r(c)(2)(A). While the provisions are worded quite differently—the first repeatedly uses to the word "right" throughout while the second does not use that word in the text of the provision—*Talevski* held both meet the *Gonzaga* test. *Talevski*, 599 U.S. at 184 ("The unnecessary-restraint and predischarge-notice provisions meet this test."). *Medina* characterized these provisions as the "yardstick" against which to measure whether a Spending Clause provision meets the *Gonzaga* test. *Medina*, 606 U.S. at 377.

By contrast, *Medina* found the "any qualified provider" provision, 42 U.S.C. § 1396a(a)(23), did not meet *Gonzaga*'s standards. *Medina*, 606 U.S. at 385. The problem with the provision was not the lack of individual focus. Rather, the *Medina* majority found it implausible that Congress intended private enforcement of Subsection (a)(23) because "[a]fter announcing that state Medicaid plans must allow individuals to obtain care from any qualified provider the provision proceeds to carve out various exceptions." 606 U.S. at 378.[6] In other words, though focused

---

[6] The "any qualified provider" provision gives States discretion to exclude any "entity convicted of a felony under Federal or State law for which the State agency

unmistakably on the individuals who are intended to benefit, the provision did not

unambiguously confer a right.  "Congress sought to convey a right against the States

in one breath but let States control its scope in the next."  *Id.*; *compare Planned*

*Parenthood of Greater Texas v. Kaufman*, 981 F.3d 347, 359 (5th Cir. 2020) (finding

that (a)(23) "unambiguously provides that a Medicaid beneficiary has the right to

obtain services from the qualified provider of her choice," but in text fatal to private

enforcement, allows the state discretion to decide which providers are qualified, *i.e.*

text that "does not unambiguously say that a beneficiary may contest or otherwise

challenge a determination that the provider of her choice is qualified"), *with*

*Talevski*, 599 U.S. at 181-82 (concluding Medicaid's transfer and discharge notice

provision meets the Gonzaga test where it prohibited residents from being

transferred but then allowed the nursing facility discretion to decide when

transfer/discharge was appropriate for the resident's welfare or improvement in

health).

> ## 2. The availability and comparability provisions are privately enforceable.

The availability and comparability provisions are enforceable under § 1983.

The availability provision mandates that:

---

determines is inconsistent with the best interests of beneficiaries under the State
plan."  42 U.S.C. § 1396a(a)(23).  States can also exclude "a provider or supplier to
which a moratorium under subsection (kk)(4) is applied."  *Id.*

> "A State plan for medical assistance **must** -- … (10) **provide** -- (A) for making medical assistance available, including at least the care and services listed in paragraphs (1) through (5), (13)(B), (17), (21), (28), (29), and (30) of section 1396d(a) of this title, to … **all individuals**" meeting specified eligibility criteria.

42 U.S.C. § 1396a(a)(10)(A) (emphasis added).

The comparability provision mandates that:

> "… the medical assistance made available to **any individual** described in subparagraph (A) [the availability provision] (i) **shall not** be less in amount, duration, or scope than the medical assistance made available to any other such individual, and (ii) **shall not** be less in amount, duration, or scope than the medical assistance made available to individuals not described in subparagraph (A)."

42 U.S.C. § 1396a(a)(10)(B) (emphasis added).

***Both provisions "focus on the benefited class" of individuals.*** *Gonzaga*, 536 U.S. at 274. Sections 1396a(a)(10)(A) and (B) are "unmistakably focused on the specific individuals benefited; [they] provide[] for medical assistance to all individuals who meet eligibility requirements." *Watson*, 436 F.3d at 1160 (applying *Gonzaga*). Both provisions' explicit grant of rights to the eligible *individual* makes plain their "individual rather than aggregate focus." *Isaac A. v. Carlson*, 775 F. Supp. 3d 1296, 1334 (N.D. Ga. 2025). In short, they use precisely the "individual-centric language with an unmistakable focus on the benefited class" that makes a provision enforceable under 42 U.S.C. § 1983. *Talevski*, 599 U.S. at 183 (quotations omitted).

***Both provisions use "rights-creating language."*** *Gonzaga*, 536 U.S. at 287.

The comparability and availability provisions clearly and unambiguously use rights-creating terms with an unmistakable focus on individuals and removal of State discretion. The availability provision's requirement that states "must provide" services mirrors the NHRA transfer provision in *Talevski* that nursing facilities "must permit" residents to remain. 42 U.S.C. § 1396r(c)(2)(A). Moreover, both provisions' "must provide" and "shall not" language is "difficult, if not impossible, as a linguistic matter, to distinguish" from the rights-creating language in Titles VI [42 U.S.C. 2000d] and IX of the Civil Rights Act [20 U.S.C. § 1681(a)]. *Sabree*, 367 F.3d at 190.

When discussing *Talevski* and the NHRA provisions, *Medina* noted that Congress set some rights-creating NHRA provisions apart from others—a factor that "helped alert" states that they will have "a duty to answer private suits." *Medina*, 606 U.S. at 380. To illustrate, the NHRA mandates are established as required contents of the state's Medicaid plan, 42 U.S.C. § 1396a(a)(28), and are further defined outside of the state plan listing in, for example, § 1396r(c)(1)(A)(ii), prohibiting use of chemical restraints, and § 1396r(c)(2)(A), establishing transfer and discharge protections. So too with the availability provision, which is not only established as required content in the state plan in § 1396a(a)(10)(A), but also further defined outside of the state plan. For example, Congress establishes which

26

individuals states must extend Medicaid assistance to § 1396a(a)(10)(A) and then further alerts states to their duties with respect to these individuals in provisions outside of Section (10)(A), for example Section 1396d(n) (defining children and pregnant women whom States must cover) and Section 1396d (listing benefits states must cover).

Finally, ***both the comparability and availability provisions unambiguously confer rights* and then stop**.  Specifically, the availability provision requires that for people within clearly defined eligibility categories, the state "must … provide … at least the care and services listed in paragraphs (1) through (5), (13)(B), (17), (21), (28), (29), and (30) of section 1396d(a) of this title."  42 U.S.C. § 1396a(a)(10)(A).  The statute does nothing thereafter to qualify those requirements, which are mandatory not discretionary.  The comparability provision similarly states in mandatory terms that any assistance provided under the availability provision "shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual."  42 U.S.C. § 1396a(a)(10)(B).  The obligation is phrased in mandatory terms, and unlike the (23)(A) provision at issue in *Medina*, gives no discretion to the State.

**3.**     **The remaining factors considered by *Medina* do not weigh against private enforcement of the provisions at issue here.**

*Medina* considered other factors, but none of them weigh against the Court concluding that Plaintiff can enforce the particular Medicaid provisions at issue in this case.

*First*, the Court noted that the inclusion of a provision in § 1396a(a)'s listing of the required contents of the state plan can raise concerns. *Medina*, 606 U.S. at 379-80. However, if a provision's wording meets *Gonzaga*'s test, it does not matter where in the Medicaid Act it is placed. Congress amended the Social Security Act (of which Medicaid is a part) in 1994 to state: "In an action brought to enforce a provision of the Social Security Act, such provision is not to be deemed unenforceable because of its inclusion in a section of the Act requiring a State plan or specifying the required contents of a State plan." 42 U.S.C. § 1320a-2; *see Medina*, 606 U.S. at 379-80 (acknowledging § 1320a-2).[7] And as already noted, the NHRA, found enforceable in *Talevski*, is included in § 1396a(a) among the listing of contents for state plans. *See* 42 U.S.C. § 1396a(a)(28).

*Second*, the Court discussed the Medicaid Act's "substantial compliance" provision, 42 U.S.C. § 1396c, that authorizes the government to terminate federal

---

[7] *See, e.g.*, H.R. Rep. No. 103-761, at 819 (1994) (Conf. Rep.) ("[T]he intent of this provision is to assure that individuals who have been injured by a State's failure to comply with the Federal mandates of the State plan titles of the Social Security Act are able to seek redress in the federal courts to the extent they were able to prior to" the [1992] decision in *Suter v. Artist M*…."). Notably, the Family Educational Rights and Privacy Act, at issue in *Gonzaga*, is *not* a part of the Social Security Act.

funding to a state that is substantially noncompliant with the state plan requirements. *Medina*, 606 U.S. at 379. However, multiple courts, including the *Medina* and *Talevski* Courts, have concluded that the Medicaid Act's federal enforcement provisions do not bar resort to § 1983 when the substantive provision meets the *Gonzaga* test. *See*, *e.g.*, *Medina*, 606 U.S. at 379 (citing *Talevski*'s enforcement of Medicaid Act provisions and acknowledging that § 1396c does not act as an absolute bar).

*Third*, *Medina* contrasted the any qualified provider provision with the *Talevski* NHRA provisions, noting with favor that the NHRA provisions used the word "right." 606 U.S. at 377-78. However, the Court's discussion did not establish a bright line test. Rather, it reaffirmed the *Gonzaga* test. *Medina*, 606 U.S. at 368; *see also Talevski*, 599 U.S. at 183 (noting the "established" *Gonzaga* test requires courts to "employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' individual rights upon a class of beneficiaries").

Indeed, the Supreme Court has repeatedly recognized, "we have never required that Congress use magic words." *Soto v. United States*, 605 U.S. 360, 371 (2025) (citation omitted); *see also*, *e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 436 (2011) ("Congress, of course, need not use magic words in order to speak clearly …."). If using the word "right" were what the Court meant by

"rights-creating language," the lengthy discussions in *Gonzaga*, *Talevski*, and *Medina* would have been much shorter. There would have been no need to analyze whether the law in question clearly and unambiguously uses rights-creating terms, if the only acceptable term is "right."

Moreover, the *Gonzaga* Court cited statutory provisions in Titles VI and IX as examples of provisions that "create individual rights," even though they do not use the word "right." 536 U.S. at 284, 287; *see also id.* at 289 n.7 (refusing to adopt Justice Stevens' suggestion that "any reference to 'rights,' even as a shorthand means of describing standards and procedures imposed on funding recipients, should give rise to a statute's enforceability under § 1983"). Finally, as pointed out above, the text of the NHRA transfer-and-discharge provision that *Talevski* found to be enforceable does not use the word "right."[8]

_____

[8] Subsection headers do use the word "rights." However, as *Medina* noted, "'it has long been established that the title of an Act cannot enlarge or confer powers by itself.'" 606 U.S. at 382 (quoting *Pennhurst*, 451 U.S. at 19, n.14); *see, e.g.*, *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528 (1947) ("[H]eadings and titles are not meant to take the place of the detailed provisions of the text."). The Court has held Spending Clause provisions unenforceable even though the header contained the word "rights." *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 31-34 (1981) (regarding the "Bill of Rights" section of the "Developmentally Disabled Assistance and Bill of Rights Act"); *Gonzaga*, 536 U.S. at 290-91 (regarding provisions of the "Family Education Rights and Privacy Act").

In sum, there is no specific language that Congress must use to create an enforceable right under § 1983. Rather, the question is whether, "employing traditional tools of statutory construction," the wording of the provision reflects that Congress has "unambiguously conferred individual rights upon a class of beneficiaries to which the plaintiff belongs." *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 283, 285-286) (citation modified). The Medicaid Act contains thousands of provisions. *See* 42 U.S.C. § 1396-1396w-8. While the vast majority of them do not meet the *Gonzaga* test, the availability and comparability provisions are among the tiny handful that do.

## CONCLUSION

The Court should find questions about enforceability to have been affirmatively waived by Defendants and therefore should not reach the issue of enforceability. Regardless, on the merits, application of the *Gonzaga* test, which *Medina* and *Talevski* reaffirm is controlling, confirms that the availability and comparability provisions are enforceable.

This Court should affirm the district court's grant of summary judgment to Ms. Anderson under the Medicaid Act.

Dated: December 23, 2025          Respectfully submitted,

/s/ *Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
ogonzalez-pagan@lambdalegal.org

Tara L. Borelli
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1 West Court Square, Ste. 105
Decatur, GA 30030
Phone: (470) 225-5341

Nora Huppert
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Phone: (312) 663-4413

Anna P. Prakash
NICHOLS KASTER, PLLP
80 South 8th Street, Suite 4700
Minneapolis, MN 55402
Phone: (612) 256-3200

Walt Auvil
THE EMPLOYMENT LAW CENTER, PLLC
1208 Market Street
Parkersburg, WV 26101
Phone: (304) 485-3058

*Counsel for Plaintiff-Appellee*

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing filing complies with the relevant typeface requirements of the Federal Rules of Appellate Procedure and Federal Circuit Rules.

The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

This brief also complies with the relevant type-volume requirements because, excluding the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 7,475 words.

Neither the Court's December 9, 2025 Order nor the Federal Rules of Appellate Procedure and this Court's Rules set forth a type-volume limitation for supplemental briefs. Accordingly, Plaintiff has limited herself to the type-volume limitation of 7,500 words set forth in the Court's September 25, 2025 Order (Dkt. 128) pertaining to the first round of supplemental briefs.

Dated: December 23, 2025

/s/ *Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
ogonzalez-pagan@lambdalegal.org

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2025, I filed the foregoing document through the Court's CM/ECF system, which will serve an electronic copy on all registered counsel of record.

Dated: December 23, 2025

/s/ *Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
ogonzalez-pagan@lambdalegal.org