# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

SHAUNTAE ANDERSON, et al.,

*Plaintiffs-Appellees,*

v.

WILLIAM CROUCH, et al.,

*Defendants-Appellants.*

On Appeal From The United States District Court for the Southern District Of West Virginia in Case No. 3:20-cv-00740 (Chambers, J.)

## APPELLANTS' RESPONSE IN OPPOSITION TO PETITION FOR REHEARING EN BANC

LOU ANN S. CYRUS
KIMBERLY M. BANDY
ROBERTA F. GREEN

SHUMAN MCCUSKEY SLICER PLLC
P.O. BOX 3953
CHARLESTON, WV 25339
(304) 345-1400

JOHN B. MCCUSKEY
*Attorney General*

CALEB B. DAVID
*Deputy Solicitor General*
*Counsel of Record*

EMILY C. AHLSTROM*
*Assistant Solicitor General*

OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
Phone: (304) 558-2021
caleb.b.david@wvago.gov

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

Table of Authorities ...................................................................................... ii

Introduction ....................................................................................................1

Background ......................................................................................................2

I.     The State's Medicaid plan ...............................................................2

II.    This case .............................................................................................2

III.   *United States v. Skrmetti* ...............................................................2

IV.    The Supreme Court's GVR ..............................................................5

Argument .........................................................................................................6

I.     The panel faithfully applied precedent ..........................................6

       A.     *Bostock*—as clarified in *Skrmetti*—applies to the Section 1557
              analysis ...................................................................................6

       B.     *Skrmetti* forecloses Plaintiffs' proxy discrimination argument .......10

       C.     Plaintiffs present no evidence of pretext .............................13

       D.     Supreme Court precedent—including *Skrmetti*—forecloses
              Plaintiffs' sex stereotyping argument .................................15

       E.     The panel adhered to the principles of party presentation ..............17

II.    Post-*Skrmetti*, this case no longer presents a question of exceptional
       importance ........................................................................................20

Conclusion .....................................................................................................21

Certificate of Compliance ............................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Crouch,*
    No. 22-1927, 2026 WL 667919 (4th Cir. Mar. 10, 2026) .2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 18, 19

*Bostock v. Clayton Cnty.,*
    590 U.S. 644 (2020) .................................................................................9, 12

*Bray v. Alexandria Women's Health Clinic,*
    506 U.S. 263 (1993) .......................................................................................10

*Brown v. Bd. of Educ.,*
    347 U.S. 483 (1954) .......................................................................................18

*Crouch v. Anderson,*
    145 S. Ct. 2835 (2025) .................................................................................2, 5

*Dobbs v. Jackson Women's Health Org.,*
    597 U.S. 215 (2022) .......................................................................................14

*Geduldig v. Aiello,*
    417 U.S. 484 (1974) .....................................................................................4, 10

*Grimm v. Gloucester County School Board,*
    972 F.3d 586 (4th Cir. 2020) ......................................................................6, 17

*Henry v. City of Rock Hill,*
    376 U.S. 776 (1964) .........................................................................................1

*Holland v. Elevance Health, Inc.,*
    No. 25-1359, 2026 WL 850818 (1st Cir. Mar. 27, 2026) ...............................12

*Kadel v. Folwell,*
    100 F.4th 122 (4th Cir. 2024) .........................................................................2

*Lange v. Houston Cnty.,*
    152 F.4th 1245, 1258 (11th Cir. 2025) .............................................................9

ii

*Lawrence on Behalf of Lawrence v. Chater*,
  516 U.S. 163 (1996)......................................................................................1

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024)......................................................................................8

*Pers. Adm'r of Mass. v. Feeney*,
  442 U.S. 256 (1979).........................................................................10, 11, 14

*United States v. Skrmetti*,
  605 U.S. 495 (2025)..................................................2, 3, 4, 5, 7, 11, 16, 17

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977).............................................................................10, 15

*Washington v. Davis*,
  426 U.S. 229 (1976).............................................................................10, 11

**Statutes**

20 U.S.C. § 1681(a) ........................................................................................6

**Rules**

FED. R. APP. P. 40 ..........................................................................................1

FED. R. EVID. 201 .........................................................................................18

**Other Authorities**

Allison Orr Larsen, *Confronting Supreme Court Fact Finding*,
  98 VA. L. REV. 1255 (2012) .......................................................................18

# INTRODUCTION

"[R]ehearing en banc is not favored." FED. R. APP. P. 40(a). It's especially unwarranted here. The en banc court already looked at this case once. And after deciding *Skrmetti*, the Supreme Court vacated the en banc decision and remanded the case. That grant, vacate, and remand, though not a decision on the merits, signaled that *Skrmetti* was "sufficiently analogous and, perhaps, decisive to compel re-examination of th[is] case." *Henry v. City of Rock Hill*, 376 U.S. 776, 777 (1964). At a minimum, it demonstrated a "reasonable probability that the [initial en banc] decision … rest[ed] upon a premise" that *Skrmetti* had changed. *Lawrence on Behalf of Lawrence v. Chater*, 516 U.S. 163, 167 (1996).

On remand, these principles held true; *Skrmetti* demanded a different result. Plaintiffs' core arguments boil down to little more than disagreement with *Skrmetti*. They're free to disagree. But this Court is duty-bound to apply *Skrmetti* (and all other Supreme Court precedent), and the panel did just that. The panel also properly applied this Court's binding precedent. Though this case may have dealt with open and important questions pre-*Skrmetti*, those questions have since been answered. The petition should be denied.

1

# BACKGROUND

## I. The State's Medicaid plan.

West Virginia's Medicaid plan covers many, but not all, medical services. *Anderson v. Crouch*, No. 22-1927, 2026 WL 667919, at *1 (4th Cir. Mar. 10, 2026). As relevant here, the plan doesn't cover "transsexual" surgeries. *Id.*

## II. This case.

Plaintiffs "are participants in West Virginia's Medicaid program who have been diagnosed with gender dysphoria." 2026 WL 667919, at *1. They want to "undergo surgery to treat their gender dysphoria but would be denied coverage" under the policy. *Id.* They filed this lawsuit alleging violations of the Equal Protection Clause, Affordable Care Act, and Medicaid Act. *Id.* The district court granted Plaintiffs summary judgment on all three grounds. *Id.* This en banc Court affirmed. *Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024).

Defendants then sought the Supreme Court's review. *Crouch v. Anderson*, 145 S. Ct. 2835 (2025).

## III. *United States v. Skrmetti*.

While Defendants' petition for certiorari was pending, the Supreme Court decided *United States v. Skrmetti*, 605 U.S. 495 (2025). There, the Court

considered "whether a Tennessee law banning certain medical care for transgender minors violate[d] the Equal Protection Clause." *Id.* at 500.

The Court held that the law contained no sex-based classification. *Id.* at 511. The law prohibited puberty blockers for minors, but not for adults. *Id.* And it permitted healthcare providers to "administer puberty blockers or hormones to minors to treat certain conditions but not to treat gender dysphoria." *Id.* So the law's application turned on age and medical purpose, not sex (or gender identity). *Id.* That conclusion followed for at least a couple basic reasons.

First, the statute's "mere reference to sex [was not] sufficient to trigger heightened scrutiny." *Id.* at 512. Particularly because "[s]ome medical treatments and procedures are uniquely bound up in sex," "the mere use of sex-based language does not sweep a statute within the reach of heightened scrutiny." *Id.*

Second, the law's application didn't "turn[] on sex." *Id.* The Court explained that a female taking puberty blockers to treat "gender incongruence" "receives a different medical treatment" than a male "who takes puberty blockers to treat his precocious puberty." *Id.* at 514. The law's application thus turned on medical treatment. *Id.*

The Supreme Court also rejected the argument that the law enforced sex stereotypes, as "the statutory findings" did not "evince sex-based stereotyping." *Id.* The law's goal—"encouraging minors to appreciate their sex" rather than undergo irreversible medical care—raised no inference of impermissible sex stereotypes. *Id.*

*Skrmetti* further held that the law didn't classify based on transgender status. *Id.* at 517. The law did not "exclude any individual from medical treatments based on transgender status." *Id.* at 518. Instead, it "remove[d] one set of diagnoses," including gender dysphoria, "from the range of treatable conditions." *Id.* at 518-19.

On this point, the Court relied on *Geduldig v. Aiello*, 417 U.S. 484 (1974). Tennessee's law "divide[d] minors into two groups: those who might seek puberty blockers or hormones to treat the excluded diagnoses, and those who might seek puberty blockers or hormones to treat other conditions." *Skrmetti*, 605 U.S. at 519. That second group "encompasse[d] both transgender and nontransgender individuals." *Id.* So, as in *Geduldig*, there was "a 'lack of identity' between transgender status and the excluded medical diagnoses." *Id.* The law thus classified based on diagnosis *without* discriminating based on gender identity.

The Court also addressed *Bostock*. Applying *Bostock*'s test, the Court hypothesized that there was a "transgender boy seek[ing] testosterone to treat his gender dysphoria." *Skrmetti*, 605 U.S. at 520. If the minor's "biological sex [were changed] from female to male, [the law] would *still* not permit him the hormones he seeks because he would lack a qualifying diagnosis for the testosterone." *Id.* (emphasis added). So "neither his sex nor his transgender status [was] the but-for cause of his inability" to obtain medication. *Id.* at 521.

Because the law turned on age and medical use, rational basis review applied. *Id.* at 511. And the law "clearly [met] th[at] standard." *Id.* at 522.

## IV.    The Supreme Court's GVR.

After deciding *Skrmetti*, the Supreme Court granted Defendants' petition for certiorari, vacated this Court's en banc decision, and remanded for reconsideration in light of *Skrmetti*. *Crouch*, 145 S. Ct. 2835. This Court referred the case to a panel, and "[f]ollowing the Supreme Court's guidance," the panel reversed. 2026 WL 667919, at *1.

**ARGUMENT**

## I. The panel faithfully applied precedent.

### A. *Bostock*—as clarified in *Skrmetti*—applies to the Section 1557 analysis.

The panel decision faithfully applied Supreme Court and Fourth Circuit precedent to analyze liability under Section 1557. Plaintiffs argue that the panel improperly applied *Geduldig* and *Skrmetti* "in the statutory context." Pet.3. Not so.

The panel applied *Skrmetti* in the Section 1557 inquiry only so far as *Skrmetti* addressed how *Bostock* works.

The panel showed its work on the Section 1557 analysis. This Affordable Care Act provision "ties its antidiscrimination provision directly to Title IX's." *Anderson*, 2026 WL 667919, at *10. Title IX prohibits "discrimination on the basis of sex." *Id.* (cleaned up) (quoting 20 U.S.C. § 1681(a)). And per *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), "the Supreme Court's *Bostock* approach to sex discrimination in Title VII extends to Title IX." 2026 WL 667919, at *10. So the panel applied the "Fourth Circuit precedent that [bound]" it, using the "interpretation[] of Title VII [to] inform [its] understanding of [Section] 1557." *Id.*

6

The panel recognized that it was "bound to follow the Supreme Court's instructions" in *Skrmetti* "about the correct way to apply *Bostock*." *Id.*

Applying *Bostock*, the panel "change[d] one thing at a time [to] see if the outcome change[d]." 2026 WL 667919, at *11 (cleaned up). And changing a person's sex didn't change their coverage eligibility. *Id.* The panel applied this test to a plaintiff, here: If "Plaintiff Anderson's biological sex [changed] from male to female, West Virginia would still deny Anderson coverage for a vaginoplasty and breast augmentation, because Anderson would still 'lack a qualifying diagnosis' for the treatments." *Id.* (quoting *Skrmetti*, 605 U.S. at 520). "But if Anderson had … [another] diagnosis" like breast cancer, "Anderson 'could obtain' treatment 'regardless of sex or transgender status.'" *Id.* (quoting *Skrmetti*, 605 U.S. at 521).

It makes sense that the panel decision came out the same as *Skrmetti* on this point. Not only is *Skrmetti*'s read of *Bostock* binding, but the context is the same, so the analysis maps on exactly. *Skrmetti* applied *Bostock*'s but-for test to a regulation allowing medications for some conditions but barring them for gender dysphoria. *Skrmetti*, 605 U.S. at 520-22. And there, "sex [was] simply not a but-for cause of [the law's] operation." *Id.* at 522. The Exclusion here works the same way.

The panel didn't rely on *Geduldig*. *See* 2026 WL 667919, at *10-11. Instead, it mentioned *Geduldig* only to address (and reject) the same argument Plaintiffs make here—that Congress's decision to expand Title VII to cover pregnancy discrimination was a binding repudiation of the Supreme Court's reasoning in *Geduldig* that somehow makes "discrimination based on gender dysphoria … discrimination based on transgender status and therefore sex." Pet.3-6.

The panel was right to reject those arguments. Congress cannot "correct[] the outcome" or "reject[] the reasoning" of cases in a way that binds courts. Pet.3 (cleaned up). After all, "it is emphatically the province and duty … [of the judiciary alone] to say what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (cleaned up). Plus, Plaintiffs' legislative history arguments "overextend[] the Pregnancy Discrimination Act and *Newport News*." 2026 WL 667919, at *11 n.17. "The Pregnancy Discrimination Act statutorily mandated that discrimination because of pregnancy qualifies as sex discrimination under Title VII," and "*Newport News* interpreted th[at] statute." *Id.* But "neither goes beyond that." *Id.*

Congress's response to *Geduldig* ultimately undermines Plaintiffs' point. True, Congress decided post-*Geduldig* to expand Title VII to reach

8

pregnancy discrimination. But Congress took no action post-*Bostock*. *Bostock* used a narrower but-for causation standard to analyze whether sex discrimination occurred instead of a broader rule (pressed by some) that discrimination against a transgender person *always* equals sex discrimination. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020). Congress has left that holding untouched. So even if Plaintiffs' legislative history arguments on pregnancy discrimination liability withstood scrutiny, they would be irrelevant here. Ultimately, these arguments amount to a backdoor attack on *Skrmetti* itself—something this Court cannot indulge. *See Lange v. Houston Cnty.*, 152 F.4th 1245, 1258 (11th Cir. 2025) (Rosenbaum, J., concurring in the judgment) (using Plaintiffs' logic to criticize *Skrmetti*, but conceding it binds).

Bostock applies because this Court's binding precedent extends it to Title IX, and therefore Section 1557. And *Bostock* applies as clarified in *Skrmetti*. Under that test, "changing a [p]laintiff's sex or transgender status does not alter West Virginia's choice to decline coverage for the requested services." 2026 WL 667919, at *11 (cleaned up). So the panel correctly found that the Exclusion doesn't violate Section 1557.

**B.** *Skrmetti* forecloses Plaintiffs' proxy discrimination argument.

The panel correctly held that Plaintiffs' proxy discrimination argument wasn't viable. *Skrmetti* forecloses any argument otherwise.

Proxy discrimination is different than pretext. Proxy discrimination asks whether a facially neutral criterion is being used as a stand-in to target a protected trait, *see Geduldig*, 417 U.S. at 496; pretext asks whether a legitimate-sounding reason for an action is a lie and the real reason is discriminatory, *see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Although different, both theories require proof of discriminatory purpose. *Washington v. Davis*, 426 U.S. 229, 240-42 (1976).

The panel correctly framed the proxy discrimination inquiry. The question is whether a policy is "shaped" by a "discriminatory purpose," 2026 WL 667919, at *3 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 276 (1979)), or "uses a classification that is so obviously a proxy for a suspect class that 'an intent to disfavor that class can be readily presumed,'" *id.* (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993)). Neither method works here.

Start with the "obvious" proxy. Plaintiffs contend that the Exclusion effectuates proxy discrimination because of the close association between

transgender people and treatments for gender dysphoria. Pet.7, 10-11. *Skrmetti* forecloses this argument. Here, as in *Skrmetti*, "only transgender individuals seek [this medical] treatment." 605 U.S. at 519. But there's a "'lack of identity' between transgender status and the excluded medical diagnoses," so this disproportionate impact raises no inference of proxy discrimination. *Id.*

Plaintiffs' sole authority for their contrary position is a single circuit court case. Pet.10-11. But the Supreme Court's decision—not one circuit's gloss on it—binds this Court. And *Skrmetti* held that even though "*only* transgender individuals seek treatment for gender dysphoria," a law that bans such treatments "does not exclude any individual from medical treatments on the basis of transgender status." 605 U.S. at 518-19 (emphasis added). That holding is fatal to Plaintiffs' proxy discrimination argument.

The Exclusion isn't shaped by discriminatory purpose, either. To successfully assert this theory, Plaintiffs must prove a classification "overwhelmingly affects a suspect class," 2026 WL 667919, at *3, *and* cannot "plausibly [be] explained on a neutral ground," *Feeney*, 442 U.S. at 275. So "the mere fact that a law primarily—or even exclusively—affects a protected class cannot alone establish an equal protection claim." 2026 WL 667919, at *4 (citing *Washington*, 426 U.S. at 242).

Plaintiffs wrongly claim that applying this precedent "reduce[s] proxy discrimination to mere rational basis review." Pet.8. Not so. The panel correctly recognized that this precedent required "[s]ome additional evidence of discriminatory intent beyond underinclusive risk coverage … to trigger heightened scrutiny." 2026 WL 667919, at *5. Plaintiffs have none. That evidentiary dearth is why rational basis review applies.

The panel got the test and its application right. So there's no need for yet another look.

Finally, Plaintiffs assert that proxy discrimination violates Section 1557's antidiscrimination provision. Pet.9; *but see, e.g.*, *Holland v. Elevance Health, Inc.*, No. 25-1359, 2026 WL 850818, at *4 (1st Cir. Mar. 27, 2026) (assuming the existence of a proxy-discrimination claim under Section 1557 "dubitante"). Even if that's true, Plaintiffs don't explain why the panel's *Bostock* analysis is wrong—they don't even mention it. *Bostock* requires "intentional[] discriminat[ion] … because of sex." *Bostock*, 590 U.S. at 662. And the whole point of *Bostock*'s but-for causation standard is to ensure "a defendant cannot avoid liability just by citing some *other* factor" for its policy. *Id.* at 656. So *Bostock*'s test is designed to sus out all discrimination, proxy

included.  The panel applied *Bostock*'s test—as informed by *Skrmetti*—and found no sex-based discrimination, proxy or otherwise.

At bottom, Plaintiffs' proxy discrimination argument amounted to little more than an invitation to ignore *Skrmetti*'s relevant, binding holdings.  The panel was right to decline that offer.

## C.     Plaintiffs present no evidence of pretext.

The panel properly recognized a full *Arlington Heights* analysis was unwarranted because Plaintiffs have no evidence of pretext.

Plaintiffs believe the panel "failed to apply the correct standard." Pet.11.  But they attribute the panel's proxy analysis to pretext.  2026 WL 667919, at *4, *8 (discussing proxy discrimination and whether "rational, nondiscriminatory reasons why the law targets who or what it does" exist).  On the other hand, the panel correctly recognized that, once facial and proxy discrimination fail, Plaintiffs can still prevail on pretext if they prove that the policy "was motivated by an invidious discriminatory purpose."  *Id.* at *4 (cleaned up).

Plaintiffs' contentions about applying the wrong standard and overreliance on *Skrmetti* are both wrong and red herrings.  They present *no* evidence of pretext.

Plaintiffs primarily argue that the policy's mere *existence* shows pretext. Pet.12 (citing Doc. 147 at 11-12 ("Even if viewed as merely discriminatory impact, this demonstrates pretext.")). That's wrong. The Supreme Court has said that "[t]he regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny unless the regulation is a mere pretext designed to effect an invidious discrimination." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 236 (2022) (cleaned up). Plaintiffs' argument jumbles the standard: They claim that regulation of surgical care that only transgender persons can undergo *is* the pretext, and they don't have to show invidious discrimination. That logic flies in the face of *Bray*, *Feeney*, *Dobbs*, and *Skrmetti*. "[P]urposeful discrimination is the condition that offends the Constitution." *Feeney*, 442 U.S. at 274 (cleaned up). So Plaintiffs must prove invidious discrimination by showing a policy was chosen "because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* at 279 (cleaned up). Plaintiffs never proffered any evidence of intent—let alone invidiously discriminatory intent. *See* Doc. 32 at 2 (explaining there's no known "reason the Exclusion had been adopted at its inception").

Their second argument fares even worse. Plaintiffs contend that the State updating its policy to *expand* covered treatment options for gender dysphoria shows pretext. Pet.12. The opposite is true. The Defendants' decision to expand coverage to hormones shows their intent to provide gender-dysphoria treatment wherever it's not cost prohibitive.

Plaintiffs presented no evidence of pretext. Without "proof that a discriminatory purpose [was] a motivating factor in the decision," additional analysis wasn't required. *Arlington Heights*, 429 U.S. at 265-66.

**D. Supreme Court precedent—including *Skrmetti*—forecloses Plaintiffs' sex stereotyping argument.**

The panel rightly declined to "reach the sex stereotype analysis" because Supreme Court precedent foreclosed the argument. *Anderson*, 2026 WL 667919, at *8. Plaintiffs' suggestion that the panel decision conflicts with *Grimm* is wrong.

The panel was correct to find this case doesn't involve sex stereotypes. "A sex stereotype is a generalization about the relative capabilities of, or socially acceptable behavior for, members of each sex." 2026 WL 667919, at *7. But the State's plan "does not condition coverage based on whether a treatment aligns with or departs from a patient's sex." *Id.* It bases coverage on diagnosis. *Id.* So no sex stereotypes are in play.

15

The panel's basis for rejecting the sex-stereotyping argument here is even stronger than in *Skrmetti*. There, Tennessee's stated goal was to "encourag[e] minors to appreciate their sex." 605 U.S. at 516. The Supreme Court said even those goals didn't "evince sex-based stereotyping." *Id.* Here, the primary purpose of the Exclusion is to stay within budget. JA1131-1132 (explaining that, due to "limited budget," no services can be added without jeopardizing current benefits). If the law in *Skrmetti* didn't rest on impermissible sex stereotypes, then neither does this policy.

Plaintiffs suggest that the policy here is more extreme than the law in *Skrmetti* and that changes the sex-stereotyping analysis. Just the opposite. *Skrmetti* dealt with a law flatly banning care. *Skrmetti*, 605 U.S. at 505-07. The policy here leaves Plaintiffs free to pursue whatever treatment they like. It dictates only that surgery cannot be provided on the taxpayer dime. The age restrictions in *Skrmetti* were relevant to the sex-stereotyping question; the Court weighed the ban against the State's interest in helping minors appreciate their biological sex. That inquiry is easier here, where the Exclusion addresses only insurance coverage for—not lawful availability of—certain procedures, and the primary interest motivating the policy is financial.

Facing Supreme Court precedent defeating their theory, Plaintiffs seek shelter in *Grimm*. Pet.13. Of course, to the extent there's friction between those cases, *Skrmetti* must win out. But at least here, *Skrmetti* and *Grimm* can coexist: *Grimm* is factually different. The Court concluded that the bathroom policy in *Grimm* involved a facial sex classification that turned on sex, and the school's justifications centered on privacy concerns. *See* 972 F.3d at 593, 600. By contrast, the Exclusion here involves no facial classification, turns on medical purpose alone, and is justified primarily by cost concerns. Because many "medical treatments and procedures are uniquely bound up in sex," "reference[s] to sex" are necessary to define the treatment. *Skrmetti*, 605 U.S. at 512. A sex-stereotyping finding would thus "be especially inappropriate." *Id.*

Supreme Court precedent—particularly *Skrmetti*—compelled the panel's rejection of Plaintiffs' sex-stereotyping argument.

**E.     The panel adhered to the principles of party presentation.**

With all other arguments foreclosed by *Skrmetti* and other Supreme Court precedent, Plaintiffs toss one last Hail Mary: the party presentation rule. That attempt fails.

17

Plaintiffs take issue with one footnote in the panel decision citing a handful of studies. To start, two of the four studies *were* "presented by a[] party." *Contra* Pet.15; *see Anderson*, 2026 WL 667919, at *9 n.15 (stating amicus cited Zaliznyak study); JA777, JA1876, JA1914 (all citing Bränström study). The other two studies post-date initial briefing. *See* 2026 WL 667919, at *9 n.15 (citing Blickensderfer 2023 and Hassan 2024 studies).

Those studies aren't integral to the panel's holding, either. The panel correctly concluded that the State's "cost concerns *alone* carry the Exclusion over the rational-basis threshold." 2026 WL 667919, at *9 (emphasis added). The footnote sources just show that Defendants' concerns about "medical efficacy and necessity" were also a rational basis. *Id.*

All that is beside the point anyway: Courts can do their own research on legislative facts. *See, e.g.,* FED. R. EVID. 201 ADVISORY COMMITTEE NOTES ("No rule deals with judicial notice of 'legislative' facts."). The Supreme Court often looks beyond the record for legislative facts. *See Brown v. Bd. of Educ.*, 347 U.S. 483, 494 n.11 (1954) (relying on sociological research outside the record); Allison Orr Larsen, *Confronting Supreme Court Fact Finding*, 98 VA. L. REV. 1255 (2012) (finding that majority of 120 Supreme Court cases studied "contain[ed] at least one assertion of legislative fact supported by sources

found in house" (cleaned up)).  So courts can obtain legislative facts "*on* [*their*] *own*" without violating party presentation principles.  *Contra* Pet.15.

Plaintiffs' argument also misunderstands rational basis review.  That deferential analysis places no constraints on how courts may utilize outside sources.  Rational basis review requires no evidence at all.  It instead puts the burden on challengers to show that there's no "conceivable state of facts that could provide a rational basis for the classification."  2026 WL 667919, at *9 (cleaned up).  So the panel didn't have to rely solely on "material … presented by a[] party[] or contextualized through expert testimony[] to support the contention that the Exclusion [was] justified based on cost concerns."  *Contra* Pet.15.

And even Plaintiffs' alleged "evidence" casts no doubt on the conclusion that the State's cost concerns were rational.  No "cost research" was needed to show that the State's Medicaid plan is subject to a budget.  Pet.16.  "[F]ederal funds" may help "subsidize the care," and the State may have successfully prevented "shortfalls" before, Pet.16, but budget constraints exist, JA1471-1473, JA1491-1492 (explaining and showing budget deficits for 2024 through 2027).  Even if there were "unrebutted expert testimony that the care is cost-effective," Pet.16, it still costs.  Plus, Defendants' expert *did* rebut

that claim by making the broader assertion that the treatment was medically unnecessary. JA1860-1935. A medically unnecessary procedure is, by definition, not cost-effective.

Regardless of Plaintiffs' quibbles with its word choice, the panel decision complied with party presentation principles, rational basis review, and rules allowing independent research on legislative facts. One footnote citing articles tangential to any holding doesn't warrant en banc review.

II.  **Post-*Skrmetti*, this case no longer presents a question of exceptional importance.**

Perhaps before *Skrmetti*, this case may have presented open and significant questions about equal protection implications of medical regulations related to gender dysphoria treatment. It no longer does.

One argument (pretext) is foreclosed by longstanding, settled Supreme Court precedent. And Plaintiffs only half-heartedly raised pretext anyway. *See* Pet.11-13. That argument presents no issue of exceptional importance.

Another argument (party presentation) is similarly unexceptional. First and foremost, it's meritless. And there's no split on whether a court may cite legislative facts.

*Skrmetti* disposes of the remaining three arguments. Two of them (proxy discrimination and sex stereotyping) were rejected outright. *Skrmetti*

also addresses how the *Bostock* analysis works, and this Court's precedent dictates *Bostock* applies to Section 1557; thus, Plaintiffs' claim of over-applying *Skrmetti* there falls flat. So on the only previously open important questions, *Skrmetti* has since closed the door.

***

The panel properly applied *Skrmetti* and all other binding precedent. And the once-novel equal protection questions are open-and-shut post-*Skrmetti*. En banc review is thus unwarranted.

**CONCLUSION**

The Court should deny the petition.

Respectfully submitted,

| | |
|---|---|
| LOU ANN S. CYRUS | JOHN B. MCCUSKEY |
| KIMBERLY M. BANDY | *Attorney General* |
| ROBERTA F. GREEN | |

/s/ Caleb B. David

SHUMAN MCCUSKEY SLICER PLLC
P.O. BOX 3953
CHARLESTON, WV 25339
(304) 345-1400

CALEB B. DAVID
  *Deputy Solicitor General*
  *Counsel of Record*

EMILY C. AHLSTROM*
  *Assistant Solicitor General*

OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
Phone: (304) 558-2021
caleb.b.david@wvago.gov


*admitted in the District of Columbia;
practicing under supervision of West
Virginia attorneys

Dated:  April 6, 2026

*Counsel for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE

1.	This response brief complies with Fed. R. App. P. 40(d)(3)(A) because it contains 3,900 words.

2.	This response brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as required by Fed. R. App. 40(d)(2), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

/s/ Caleb B. David
Caleb B. David